SERVISS *v.* ANN ARBOR RAILROAD CO.

1. CARRIERS—RAILROADS—STATIONS—PLATFORMS.
    Evidence that plaintiff, in alighting from defendant's passenger train, stepped on a loose bolt and burr about one and one-half inches long that was lying on the platform, but was not shown to have been there for any given period, or to have been negligently left at that place, was insufficient to charge defendant with negligence.

2. SAME.
    The relation of common carrier and passenger existed while plaintiff was alighting from the train: defendant was charged with the duty of providing and maintaining reasonably safe patforms.[1]

3. SAME—EVIDENCE—PRESUMPTIONS.
    No presumption of negligence could arise from proof of such an accident.

Error to Shiawassee; Miner, J. Submitted January 24, 1912. (Docket No. 5.) Decided March 29, 1912.

Case by Warren B. Serviss against the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Gustavus Ohlinger* and *Seth Q. Pulver* (*Alex. L. Smith*, of counsel), for appellant.
*Odell Chapman*, for appellee.

STEERE, J. This action is brought by plaintiff to recover damages for personal injuries claimed to have been sustained on September 26, 1910, while alighting from defendant's train at its station in the city of Owosso, Mich.

Plaintiff was superintendent of the Union Telephone Company, and had been in its employ for about nine

---

[1] Duty to guide or conduct passenger to or from train, see note in 20 L. R. A. (N. S.) 1041.

years. In the line of his business, he took passage on a train of defendant at Mt. Pleasant to ride to Owosso, and paid his fare. The train arrived at its station at Owosso at 10:20 in the evening. Plaintiff testified that when alighting from the car to the platform in front of the station he stepped with his left foot on a loose nut about an inch and a quarter square, through which extended a broken bolt an inch and a half long. He says:

"I stepped down with my left foot first and stepped onto something. It rolled out from under my foot, at the time the heel of my other foot was on the step of the car; my foot struck the burr, and my foot went out from under me and I struck on it. I fell. I struck the end of my spine on that burr. * * * I don't know what position the burr was in when I stepped on it. It was on the platform under me and I reached under me and got it."

It was claimed the burr was part of the equipment of defendant, and plaintiff was asked by his counsel:

"*Q.* What can you say as to there being such bolts and burrs as that used in the general equipment of a railroad?

"*A.* I have often seen such burrs as that around the tracks lots of times; not, I would say, just that size.

"*Q.* What do you say as to whether or not that is such a material as is like the equipments of railroads as to bolts and nuts? (Objected to as immaterial.)

"*The Court:* He may answer.

"*A.* It is."

Cross-examination:

"*Q.* You have never seen this size of burr used in connection with the railroad equipment, have you?

"*A.* I think I have.

"*Q.* Didn't you state on your direct examination that you had not seen that particular size?

"*A.* I did not know as it was that particular size.

"*Q.* What?

"*A.* I said I didn't know as it was that particular size.

"*Q.* You don't remember of ever having seen that particular size of burr used in railroad operations, do you?

"*A.* I never measured them at the time and would not know.

"*Q.* Answer the question.

"*A.* I don't know.

"*Q.* You don't know.

"*A.* No, sir; there are three railroads in Owosso, the Grand Trunk, Michigan Central, and Ann Arbor. There is an electric road running between Owosso and Corunna, and there was in process of construction at the time of this accident a railroad from Lansing to Owosso known as the Lansing & Northeastern."

On redirect examination plaintiff further testified:

"The street railroad would be about eight rods east of where I got hurt. I have observed the plate bolt where the joints of railroads are fastened together by bolts and a plate. I have never measured any of those bolts to see how they compare in size with this bolt. I don't know what size they are on the Ann Arbor."

Cross-examination:

"The platform at Ann Arbor depot is cement. I don't know how it is lighted. The platform is a cement sidewalk; runs nearly out to the tracks. On the occasion of the accident, it was covered with cinders."

Redirect examination:

"I did not see this bolt or burr before I stepped on it, and I didn't know it was there. I believed that the place where I was alighting was reasonably safe."

Milford Howell, the only other witness to the accident, testified he did not know just how it happened, but plaintiff seemed to fall from the steps and began to fall before he stepped upon the walk; that he fell while on the steps of the car, and not while stepping onto the platform.

This is substantially all of plaintiff's testimony touching the accident and its cause. He and other witnesses testified as to the nature and extent of his injuries.

At the conclusion of plaintiff's testimony, defendant rested its case without introducing any evidence. Defendant's counsel made the following motion:

"The defendant at this time wishes to move to direct a verdict in its favor on the ground that no negligence whatever has been shown upon the part of the defendant by

the proofs adduced by the plaintiff. It has not yet been shown by the plaintiff where the bolt and burr came from, or how long it had been on the platform; and this is not a case in which the doctrine of *res ipsa loquitur* should apply. It is not shown that this bolt and burr had been placed there voluntarily by an employé of this company; there is no testimony that this bolt and burr had been there one minute before Mr. Serviss stepped upon it; it has not been shown but what the bolt and burr might have been picked up just before the arrival of that train by some trespasser or by some child or by some one else and thrown upon the platform in play. Furthermore, this bolt is not an obstruction under the law."

This motion was denied and the case submitted to the jury, a verdict being rendered in favor of plaintiff for $500. In his charge, the court instructed the jury, among other things, as follows:

" If you find that plaintiff himself was not guilty of any negligence in getting down off from the platform or getting down from the steps onto the platform, which in any way contributed to the injury, and you find that the rolling of this bolt, or this bolt being upon the platform, and you should find that defendant (plaintiff) stepped upon that bolt, as he stepped down one foot onto the platform, and you find that the rolling of that bolt under him gave way, and by reason thereof he was thrown to the platform and was injured, and that the rolling of said bolt or stepping on said bolt and its rolling was the proximate cause—that is, the real cause of the injury—then plaintiff would be entitled to recover."

A motion was made for a new trial which was denied, and the case was removed to this court by writ of error.

The questions of plaintiff's contributory negligence and whether or not his fall was caused by stepping on the burr were unquestionably issues of fact. The court instructed the jury squarely that, if his fall resulted from stepping on the bolt, he was entitled to recover.

There was no evidence how long the object had lain on the platform, where it came from, or how it got there. It was an ordinary threaded burr, or nut, with no marked peculiarities, having in it a fragment of its broken coun-

terpart—a small piece of scrap iron which might be concealed in a closed hand and easily kicked or tossed about. Nuts and bolts are found and used in an endless variety of places and appliances. Plaintiff's testimony that he had seen such around the tracks lots of times, and it was like the equipments of railroads as to nuts and bolts, does not, without further identification, have probative force raising an issue of fact as to this being a part of the equipment of defendant, a careless use of which by employés might imperil the safety of passengers.

That the relation of common carrier and passenger yet existed between the parties, while defendant was alighting from the train, is beyond question. The rule is well stated in *Brassell* v. *Railroad Co.*, 84 N. Y. 241 :

"A passenger, when taking or leaving a railroad car at a station, has the right to assume that the company will not expose him to unnecessary danger; and, while he must himself exercise reasonable care, his watchfulness is naturally diminished by his reliance upon the discharge by the company of its duty to passengers to provide them a safe passage to and from the train."

A company is required to provide and maintain reasonably safe platforms and conveniences for its passengers taking or leaving trains, and, where there are no platforms at the stopping places of trains, it is the duty of its servants to assist passengers to alight. If for want of such assistance a passenger is injured at such a place, without fault on his part, the railway is liable. *Memphis, etc., R. Co.* v. *Whitfield*, 44 Miss. 466 (7 Am. Rep. 699). The peril of moving trains, however, is not involved in this proposition. The specific question raised is the duty owed by a common carrier to its passengers while getting off, or on, at a platform while the train is not in motion.

In the case at bar no question is raised as to a suitable platform, properly lighted. The train was stationary when plaintiff left it. A small, loose article happened to be lying on the platform where he alighted. It was

manifestly so small as not to be noticed by the casual observer, otherwise plaintiff was negligent in not observing and avoiding it. Had it been observed by employés of defendant, or remained there a sufficient time to raise the presumption that they ought to have seen it, negligence might be imputed to the company for not removing it.

Under the charge of the court, defendant would be liable in case plaintiff, without negligence, stepped on it and was thereby hurt, if it had been dropped there a moment before, by another passenger or bystander. Its presence there is entirely unaccounted for. There is a total failure of proof that defendant's servants dropped it or that it had been there any length of time.

Negligence cannot be predicated on the single fact that it was there when he alighted. A presumption of negligence cannot arise from mere proof of such an accident. When the injury is connected with defective or unsafe machinery or appliances, or some improper conduct in the operating or management of a particular business, carrying with it exclusive knowledge of the cause of such injury, a presumption of negligence may arise. No special knowledge on the part of the defendant as to the cause of plaintiff's fall is manifest. The cause was as well or better known to plaintiff than to defendant.

Plaintiff urges that the high degree of care imposed upon a common carrier, in receiving and discharging passengers, required defendant to set plaintiff down safely if human foresight could do so, and that due care under such circumstances required defendant's servants to see and remove the burr before passengers alighted. The degree of care required of the common carrier at such times and places is stated, and numerous authorities cited in *Crowe* v. *Railroad*, 142 Mich. 692 (106 N. W. 395). It is there intimated that a single chunk of coal, at the point of alighting, if unaccounted for, would not be a basis on which to predicate negligence.

In *Scholtz* v. *Rapid Transit Co.*, 48 Misc. Rep. 619 (95 N. Y. Supp. 557), in speaking of an iron gate two

feet square and two inches thick lying on the station platform, and over which a passenger fell, the court said:

"This is not a case where the defect—the physical cause of the injury—bore an indication of its continued presence for an appreciable interval of time. The article itself, in view of its size, weight, and form, told no story of difficulty—hence of time—in its movement toward or placing upon the platform; and, conjecture aside, there is no room for a mental process to define an interval during which reasonable prudence could or should have been at work to protect this plaintiff from this particular hazard. The obstruction may have been placed or suffered to remain upon the platform by a servant of the defendant, or it may have been carried or thrown down by a fellow-passenger of the plaintiff a moment before he reached the place of his injury. Either contingency is possible, each is founded in conjecture, and neither is to be preferred as a matter of lawful inference."

This reasoning would apply much more forcibly to a small burr or nut, as in this case, or a chunk of coal as in the *Crowe Case*, or a wooden bung of a barrel as in the case of *Bernhardt* v. *Railroad*, 159 Pa. 360 (28 Atl. 140). In the latter case the plaintiff, a woman passenger from a train at defendant's station, stepped upon a small, round piece of wood two-thirds of an inch in diameter and two inches long, supposed to have been used for stopping a hole in a keg or cask, fell, and was injured. The court held that the mere presence of such an object at the place of disembarking, with no further proof as to how it came there or how long it had been there, did not make a *prima facie* case of negligence. Under these authorities, we think the jury should have been instructed that plaintiff's evidence did not establish actionable negligence on the part of defendant.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.