BARTHOLOMEW *v.* WALSH.

1. PRINCIPAL AND AGENT—FRAUD—SALE—STOCK—RESPONDEAT SUPERIOR.

Evidence that one of the defendants was principal in a sale of corporate stock, and the other in fact his agent, although he appeared to be acting in a representative capacity for a corporation which had issued the stock, with testimony that the books of the corporation showed that the agent was acting for the other defendant, and not

as its representative, *held*, to present an issue of fact in an action for fraudulent representations made by the alleged agent.

2. EVIDENCE—BOOKS OF RECORD—CORPORATIONS.

The original minute book of a corporation showing entries of stock issued by it is the best and primary evidence of the facts so disclosed, and, in the absence of anything tending to show the falsity or incorrectness of the exhibit, is conclusive, but where there was testimony tending to impeach the genuineness of the minute book, as by the opinion of an expert that one page had been inserted by a different operator and machine than those whereby the remainder of the record had been entered, it was proper to leave the question to the jury.

3. APPEAL AND ERROR—BRIEFS—STATEMENT OF FACTS—SUPREME COURT PRACTICE—POINTING OUT INACCURACIES.

Where the appellant in his statement of facts asserted, without correction by appellee that certain exhibits were mere expressions of opinions or intention and contained no representations of fact, the fact will be accepted by the court as stated in the brief, and hence, no claim was open to the other party that the exhibits were the basis of the false representations alleged. Supreme Court Rule 40.

4. PRINCIPAL AND AGENT—JOINT TORT-FEASOR—FRAUD.

On the trial of an action for fraud claimed by plaintiff to have induced the sale of corporate stock by one of defendants, whose agent made the sale, the guilt of the principal necessarily implied the agent's guilt; and a charge authorizing the jury to hold one of the defendants guilty as principal, followed by a verdict releasing the agent from liability, was erroneous and prejudicial.

5. SAME—KNOWLEDGE.

False representations, made without any knowledge of the facts, are fraudulent and render the party who made the statement liable for the wrong.

Error to Wayne; Mandell, J. Submitted January 13, 1916. (Docket No. 5.) Decided April 21, 1916. Rehearing denied September 27, 1916.

Case by Zachariah Bartholomew against S. Francis Walsh and W. B. J. Williams for fraud and deceit in

the sale of certain corporate stock. Judgment for plaintiff against defendant Walsh, who brings error. Reversed.

*Geer, Williams, Martin & Butler,* for appellant.

*Maxwell W. Benjamin,* for appellee.

Kuhn, J. The defendant and appellant Walsh was sued, jointly with the defendant Williams, by the plaintiff for damages resulting from the sale of worthless stock, the purchase of which, it is claimed, was induced by false representations. It is charged in the declaration that the defendant Williams made the representations as the agent of Walsh, who knew of their falsity and received the proceeds of the sales. The jury found the defendant Walsh guilty, and the defendant Williams not guilty.

It is the claim of the plaintiff, and he presents evidence tending to prove, that Williams made numerous representations as to facts concerning the organization, backing, and condition of two corporations which Walsh had promoted; and it does not seem to be disputed that if these representations were made, as claimed, they were untrue. The defendant Williams, on the other hand, denies that he made any of them, and asserts that he did not know the facts concerning the inner workings of the companies, did not know about the matters concerning which he is charged to have made fraudulent representations, and, further, that he did not tell the plaintiff anything except what he was told by the officers of the corporations and what was contained in the prospectuses or literature which he handed and explained to the plaintiff.

The defendant and appellant Walsh seeks a review of the judgment entered on several grounds, which may be summarized as follows:

(1) There was no competent evidence to show that the defendant Williams was acting as the agent of Walsh, in making these sales.

(2) The court erred in admitting certain evidence in the support of the plaintiff's claim.

(3) The verdict was clearly contradictory, and should not be allowed to stand, because, if Walsh was guilty as charged, the defendant Williams also was guilty.

With reference to the question of agency, it was the defendants' theory that Williams was the agent of the United Bankers' Corporation and its successor, the Continental Bankers' Corporation, the two corporations which were organized by Walsh. As evidence of this, there was introduced a written contract of agency signed by Williams and Anger, who was the stock sales manager of the United Bankers' Corporation, which contract constituted Williams the agent of the corporation to sell stock. There were business cards of Williams introduced, introducing him as agent or special representative of the corporation. Also, it was shown that subscriptions were taken in the name of the corporation.

On the other hand, the plaintiff showed in support of his theory that Williams was the agent of Walsh, that according to the testimony of Williams he was employed by Walsh, that Walsh had charge of the stock selling and induced Williams to sign the contract, and that he received his instructions from Walsh and reported to him. The principal evidence in support of the plaintiff's claim that Williams was acting as the agent of Walsh was a ledger showing accounts or items of stock sales in the United Bankers' Corporation, including the sale of stock to the plaintiff, which were mixed up with the personal items of Walsh. There was also introduced a copy of a copy of the official minutes of the corporation, showing that at a meeting of the United Bankers' Corporation on January 3,

1911, all the stock of the corporation, save 400 shares issued to Frederick W. Park, who was a director and legal counsel for the corporation, and Director Carhart, was set off to Walsh in exchange for 6,500 shares in the Metropolitan State Bank of Detroit. The admissibility of this evidence we will discuss later, but, if true, the sale to the plaintiff must have been out of the stock set off to Walsh. It was therefore a legitimate inference, which the jury might draw from this testimony, that Williams was selling stock in the United Bankers' Corporation which belonged to Walsh, and was therefore working for Walsh, and not for the corporation. There was also testimony to show that, after the plaintiff's subscription had been taken, the United Bankers' Corporation drew its draft on the plaintiff in favor of S. Francis Walsh & Co., and it was indorsed by Walsh for Walsh & Co., and finally cashed by the Metropolitan State Bank.

We are of the opinion that in view of the financial manipulations which Walsh carried on with these two corporations and the Metropolitan State Bank, and the inevitable conclusion that Walsh was the real actor in all these financial and stock selling transactions, there was sufficient evidence, circumstantial though it was, to warrant the jury in finding that Williams was substantially acting as the agent for Walsh, though ostensibly the agent of the corporations.

The propriety of admitting the exhibit above referred to, which tended to show that at the meeting of January 3, 1911, all the stock in the United Bankers' Corporation save 400 shares was set off to Walsh, was questioned by a proper assignment of error, on the ground that it was not the best evidence of what occurred at that meeting because the official minute book of the corporation was in court. This official minute book contained between pages 2 and 3 a typewritten manuscript showing the proceedings at the first meet-

ings of the stockholders and directors of the United Bankers' Corporation. It appears therefrom that the stockholders authorized the issuance of $2,996,000 of stock by the corporation, to buy $650,000 of the stock of the Metropolitan State Bank, and the board of directors authorized a committee, of which the defendant Walsh was a member, to investigate and accept the offer from the owner of the bank stock, and issue in exchange stock of the corporation in the above amount. The owner of the bank stock appears to be L. R. Walsh, the wife of the defendant Walsh; but there is no contention but that she held the stock simply for convenience in her name, and that it was really the property of Walsh.

On pages 5 and 6 of the minute book is the record of the minutes of a meeting of the board of directors at which "the committee reports the *inadvisability* of purchasing this stock from L. R. Walsh and paying therefor $2,996,000 in stock of this company." Pages 7 to 14 of the minute book contain by-laws of the corporation, and pages 15 to the end contain minutes of other meetings from April 4th on.

Exhibit 1 to the deposition of Mr. Park was a copy of a copy which Park had had made of all the minutes of the stockholders' and directors' meetings that appear in the corporation books. The office of the corporation was in the suite occupied by Mr. Park in New York City. Park's testimony showed that the first copy was compared twice with the original minutes, and was produced at the taking of the deposition. According to this exhibit, it was made to appear that at the meeting of January 3, 1911, the committee reported not the inadvisability, but the *advisability,* of the purchase of the bank stock and paying therefor $2,996,000; and that the secretary was ordered to take such action; and, further, that "the stock being deliv-

191 Mich.—17.

ered to the secretary, it was moved and supported that $2,996,000 of the capital stock of this corporation be issued to the order of L. R. Walsh."

It is unquestionably true that, if no other facts were made to appear questioning the correctness and genuineness of the original minute book, Exhibit 1 would be inadmissible to contradict it; for, when the original is still in existence and can be compared with a copy taken from a copy of the original, the latter is not admissible. 2 Elliott on Evidence, § 1483; 2 Wigmore on Evidence, § 1274. In order to show that the original minutes were not genuine, the plaintiff produced as a witness one Betzoldt, who claimed to be an experienced typewriter operator, and also had business relations with the counsel for the plaintiff. It was his claim that an examination of the official minute book showed that page 5 of the book had been written by a different operator on a different typewriter than page 6, as indicated by the alleged differences in type, in margining, in punctuation, in capitalizing, and in the watermarks on the paper. Upon this testimony the plaintiff makes his claim that the page had been fraudulently inserted, and that therefore the original record of the proceedings of this meeting had at least been partly destroyed or lost, and that the original record of this particular action of the board, the true nature of which is of importance in this dispute, was not in existence, at least so far as this case was concerned. Under these conditions, it is claimed that a copy of a copy of the original is admissible. Expert testimony was introduced on the part of the defendant against the testimony of Betzoldt.

We think that the testimony of the witness Betzoldt was properly received, and that its credibility was for the jury to determine. 17 Cyc. p. 189; 2 Elliott on Evidence, §§ 1101, 1102. The court instructed the jury with reference thereto as follows:

"You are instructed that the minute book, Exhibit 17, containing the minutes of the meetings of the stockholders and directors of the United Bankers' Corporation, is the best evidence of what occurred at those meetings, and, unless you find that the minutes as recorded in said book have been fraudulently altered or changed, you are instructed that you should disregard any evidence relative to any alleged meetings or any proceedings or actions at any meetings which are not thus recorded in said minute book."

If more specific instructions were desired as to the credibility of the witness a request should have been preferred. We find no error in the admission of this evidence.

We are of the opinion that no claim can be made with reference to the prospectuses as being the basis of false representations, upon this record. They were not printed in the record, and the defendant in his statement of facts declares that they contain no representations of existing facts, but only expressions of intentions or opinions, and this statement is not amended or excepted to in the plaintiff's brief. Under Supreme Court Rule 40, we will accept the statement with reference thereto in appellant's brief.

The jury, having found defendant Walsh guilty, must have come to the conclusion that the representations were made by Williams. But it appears from the testimony of the defendant Williams himself that he did not know the facts which it is claimed and alleged that he represented as true. So that it cannot be claimed that he made the representations innocently, believing them to be true, and was therefore not guilty of participation in the fraud. For it is the law that, if one makes false representations of facts which he does not know to be true and does not know anything about, he is guilty of bad faith, and cannot escape the consequences of making false representations of existing facts. 14 Am. & Eng. Enc. Law (2d Ed.), p. 97;

*Beebe* v. *Knapp*, 28 Mich. 53, 76; *Holcomb* v. *Noble*, 69 Mich. 396 (37 N. W. 497).

The court instructed the jury with reference thereto as follows:

"There are two defendants in the case. It is possible in this case to find one of the defendants guilty and the other not guilty. The form of your verdict, if you find for the plaintiff, will be guilty, fixing the damages. You may find, as I said, one defendant not guilty and the other guilty."

This is clearly an erroneous instruction, under the law and the facts in this case; for, if Walsh was guilty because of the fraudulent representations made in his behalf by Williams, it necessarily follows that Williams, also, was guilty.

Considerable discussion is had in the briefs of counsel concerning the effect of the acquittal of one joint tort-feasor upon the liability of the other. The rather contradictory state of the law with reference thereto is reviewed by the annotator in 9 L. R. A. (N. S.) at page 880. In *Gulf, etc., R. Co.* v. *James*, 73 Tex. 12 (10 S. W. 744, 15 Am. St. Rep. 743), the plaintiff sued the company and its general manager and his clerk for damages growing out of an arrest and malicious prosecution for perjury in a personal injury suit against the railroad company. The verdict was against the company and in favor of the other defendants. The court upheld the verdict, admitting that it was inconsistent and contradictory, but saying:

"In actions growing out of that class of torts characterized by the existence of a wrongful intent as distinguished from torts arising from negligence, the rule is recognized as just which compels each of the wrongdoers, when sued, to bear and assume the responsibility of all. The injured party may sue one, any number, or all chargeable with the tort, and it is no defense if one is sued that the others are not required to share his responsibility; nor where all are sued would it be

any defense that one only is made to assume the liability for the acts of all. The reason is that there can be no contribution as between them. Cooley on Torts, § 133."

The supreme court of Iowa, in *White* v. *Text-Book Co.*, 150 Iowa, 27 (129 N. W. 338), does not follow the Texas rule. The plaintiff, a former employee of the defendant company, was prosecuted by its superintendent, Crane, with the company's authorization, for embezzlement, and arrested, but was released upon making a payment, and the criminal prosecution was dismissed. He sued the company and Crane for malicious prosecution. The verdict was in Crane's favor but against the company, which had acted solely through him, having advised him to consult an attorney and be guided by the attorney's advice. The court said that since Crane was the sole agent in the matter, and the corporation could act only through its agents— "the jury must have concluded that neither had probable cause. * * * Nor could the company have been found to have been actuated by malice, unless Crane also was actuated by the same bad motive. * * * Manifestly, the verdict in finding for one defendant and against the other was fundamentally contradictory and was necessarily erroneous as to one or the other. No one can tell which. If the verdict in favor of Crane was conclusive as to the company, as is contended, then that against the company was conclusive as against Crane. The verdict, in view of the facts, is so anomalous and uncertain that a new trial should have been ordered."

In a number of cases, several of which were cited by counsel for the defendant, verdicts against the master, acquitting the servant, in joint actions founded solely on the servant's negligence, the master being absent, have been held to be self-contradictory and bad. *Indiana Nitroglycerine, etc., Co.* v. *Glass Co.*, 165 Ind. 361 (75 N. E. 649) ; *Hayes* v. *Telephone Co.*, 218 Ill. 414 (75 N. E. 1003, 2 L. R. A. [N. S.] 764) ;

*McGinnis* v. *Railway Co.,* 200 Mo. 347 (98 S. W. 590, 9 L. R. A. [N. S.] 880, 118 Am. St. Rep. 661, 9 Am. & Eng. Ann. Cas. 656) ; *Morris* v. *Improvement Co.,* 53 Wash. 451 (102 Pac. 402) ; *Southern R. Co.* v. *Harbin,* 135 Ga. 122 (68 S. E. 1103, 30 L. R. A. [N. S.] 404, and note, 21 Am. & Eng. Ann. Cas. 1011) ; *Childress* v. *Railroad Co.,* 182 Ind. 251 (105 N. E. 467) ; *Young* v. *Rohrbough,* 86 Neb. 279 (125 N. W. 513). See, *contra, Bedenbaugh* v. *Railway,* 69 S. C. 1 (48 S. E. 53) ; *Illinois Central R. Co.* v. *Murphy,* 123 Ky. 789 (97 S. W. 729, 11 L. R. A. [N. S.] 352) ; *Moore* v. *Railroad Corporation,* 4 Gray (Mass.), 465 (64 Am. Dec. 83) ; *Texas, etc., R. Co.* v. *Huber* (Tex. Civ. App.), 95 S. W. 569.

In the instant case, however, it must be clear that the erroneous charge of the court led the jury to acquit the defendant Williams and at the same time find against the defendant Walsh. We are not of the opinion that it can be said that this error in the charge was not prejudicial, for the conclusion is irresistible that the very facts necessary to be found to hold Walsh are negatived by the finding that Williams was not guilty. It is impossible to state on what theory the jury reached their determination.

For this reason, the judgment must be reversed, and a new trial granted.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.