BROWN v. ARNOLD.

1. AUTOMOBILES—TRANSPORTATION—GUEST PASSENGERS.
Under the motor vehicle guest passenger act, ''transportation'' does not require the host who has returned the guest to the front of her home to return her to her doorstep or even to the sidewalk (1 Comp. Laws 1929, § 4648).

2. SAME—TRANSPORTATION—GUEST PASSENGERS.
After host's car had stopped in street near the gutter in front of guest's home, guest alighted from the car, closed the car door, and had taken a step or two away from the car, as host started car toward another destination, the actual transportation of the guest was complete, hence the guest passenger act requiring plaintiff to show host guilty of gross negligence or wilful and wanton misconduct in order to recover was inapplicable (1 Comp. Laws 1929, § 4648).

3. SAME—NEGLIGENCE—INFERENCES DRAWN BY JURY.
In an action for damages for injuries due to motorist's negligence the jury may draw reasonable and legitimate infer-

Function of court and jury in determining contributory negligence, see 2 Restatement, Torts, § 476.

. ences from established facts and may infer negligence from the facts and circumstances.

4. SAME—JURY—PHYSICAL FACTS.
Physical facts may justify a jury finding that motorist is guilty of negligence.

5. SAME—INFERENCES—ESTABLISHED FACTS.
Negligence may be inferred from circumstances which place the case within the field of legitimate inferences from established facts.

6. SAME—NEGLIGENCE—QUESTION FOR JURY—ICE-COVERED STREET—GUTTERS.
Issue of negligence of motorist who had stopped his car on a day early in January some 2 or 3 feet from gutter of sloping street covered with ice and snow and, after 77-year-old guest had alighted and closed the car door and taken but a step or two toward terrace of a foot or so on lawn sloping toward gutter, turned his car toward center of street and started up *held*, for jury in action brought for injuries sustained when car skidded some 14 to 18 inches on the slippery slope to the gutter and struck plaintiff.

7. SAME—CONTRIBUTORY NEGLIGENCE OF ONE ALIGHTED FROM CAR.
Plaintiff, 77 years of age, who had just alighted from her host's car some 2 or 3 feet from gutter of street covered with ice and snow and had taken but a step or two when struck by rear fender of car which had been turned toward center of street and started up and who had neither the time nor opportunity to reach a place of safety on the slope of the foot-high terrace on lawn on other side of the gutter was not guilty of contributory negligence as a matter of law, hence issue of contributory negligence was properly submitted to jury.

8. DAMAGES—PERMANENT INJURIES—EVIDENCE.
In action against estate of motorist for injuries sustained by plaintiff, 77 years of age when injuries were sustained to shoulder, thigh and arm, court was not in error in declining to submit to jury the question of damages for permanent injury to plaintiff's hearing or vision where there was insufficient testimony to justify doing so.

9. SAME—PERMANENT INJURIES—PAIN AND SUFFERING—EVIDENCE.
In action for personal injuries wherein jury gave verdict for sum sufficient to cover all expenses for hospitalization and medical care and ambulance cost that were proved, Supreme

Court will not substitute its judgment for that of the jury as to permanent injuries and past and future pain and suffering in absence of proof of permanent injuries and in view of proof that motorist had paid for plaintiff's care for two months after she was returned from the hospital.

10. APPEAL AND ERROR—DAMAGES—INSTRUCTIONS—PAIN AND SUFFERING—PERMANENT INJURIES.

A plaintiff in action for personal injuries has no ground for complaint as to damages given in verdict rendered for her where full instructions as to allowance for pain and suffering, including future pain, and for permanent injuries, were given and were not less favorable to her than she was entitled to under record presented.

11. NEW TRIAL—DISCRETION OF COURT—INADEQUATE DAMAGES.

Trial court did not err in denying plaintiff's motion for new trial on ground of inadequate damages where it does not appear to have abused large measure of discretion in matter of granting new trials.

12. APPEAL AND ERROR—DISCRETION OF COURT—NEW TRIAL—DAMAGES.

The Supreme Court will not interfere with trial court's denial of a new trial because of inadequacy of damages given a plaintiff unless the abuse of trial court's discretion is palpable, especially in the absence of claim that improper methods were used by counsel for either party in presenting case to jury by appeal to sympathy, bias, or prejudice.

Appeal from Cass; Warner (Glenn E.), J. Submitted October 20, 1942. (Docket No. 76, Calendar No. 42,044.) Decided December 23, 1942. Rehearing denied April 6, 1943.

Case by Carrie T. Brown against Maude Arnold, administratrix of the estate of Baron Arnold, for damages for personal injuries sustained when struck by an automobile driven by decedent. Verdict and judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Affirmed.

*Carroll B. Jones,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendant.

BOYLES, J.  On January 5, 1941, Baron Arnold, after attending church, stopped at the home of plaintiff, Carrie T. Brown, and took her in his automobile to his sister's home for Sunday dinner.  At about 5 o'clock in the afternoon he brought plaintiff back to her home, in his automobile.  The transportation was solely for social and friendly purposes and Arnold was not paid for the transportation.  He was a relative of the plaintiff by marriage.  When they reached the plaintiff's home on the return trip, Arnold brought his automobile to a stop in the street in front of plaintiff's home, parallel with the gutter and at a distance of two or three feet between the side of his car and the gutter.  The street was about two feet higher in the center, sloping toward the gutter, there was no curb, and there was a terrace a foot or two in height sloping up on the lawn from the gutter.  The street was slippery, covered with ice and snow.  Plaintiff got out of the car on the side between the car and the terrace, closed the door, and Arnold immediately started the car, turning the front end toward the center of the street.  Plaintiff had taken only a step or two and while still in the gutter was struck by the rear fender of the car due to the rear wheels of the car skidding sideways 14 to 18 inches on the slippery downslope to the gutter.  Plaintiff was thereby thrown to the ground and quite severely injured, sued for damages, and the case was tried before a jury.  Before the case was started, Arnold died and the administratrix of his estate was named as defendant.  At the close of plaintiff's case, defendant moved for a directed verdict on the ground that plaintiff was a guest passenger and that there was no proof of gross negligence, wilful or wanton misconduct on the part of Arnold.  This motion, and defendant's subsequent motion for judgment *non obstante veredicto* on the same grounds, were denied.  The questions of Arnold's negligence and plaintiff's

freedom from contributory negligence were submitted to the jury and plaintiff had verdict and judgment for $547.60, from which defendant appeals. Plaintiff cross-appeals and asks for a new trial, claiming that the verdict was grossly inadequate.

The first question for determination is whether the relationship of guest passenger existed at the time of the injury within the meaning of 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446), the applicable provision of which is as follows:

"That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall·have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The precise question is, whether the plaintiff, after being returned to her home and having alighted from the car in front of her home and closed the car door, the car having been started and she having taken a step or two when struck by the rear fender of the car, was still a guest passenger at the time of the injury within the meaning of the act?

Obviously the actual transportation had ended when the injury occurred. Plaintiff had been returned in front of her home and the automobile started up again toward some other destination. There was no part of the "transportation" requiring Arnold to return the plaintiff to her doorstep or even to the sidewalk. However, the defendant, relying upon decisions applying to common carriers of passengers and goods for hire, claims that plain-

tiff was still a guest passenger, *i. e.*, that the "transportation" continued within the meaning of the guest passenger act not only while plaintiff was alighting from the automobile, but also "while in close proximity in time and place" to the vehicle in which she was given a gratuitous ride.

Defendant cites numerous cases, applying both to railroad transportation and to street cars, holding that common carriers of passengers or goods for hire owe a duty to safely deliver. As applied to whether Arnold was guilty of ordinary negligence, they are authority in the case before us. But the issue in those cases was whether the defendant was guilty of negligence, not whether the defendant was guilty of gross negligence or wilful and wanton misconduct. We know of no decision where the provisions of the motor vehicle guest passenger act have been held to apply to the liability of common carriers for negligence in transporting passengers or goods for hire. In fact, the act itself limits its application to cases where the transportation is not for hire. Nor do the decisions relied upon by defendant which hold that the act of transportation continues while the passenger is alighting, such as *Serviss* v. *Railroad Co.*, 169 Mich. 564, and *Tuttle* v. *Railway Co.*, 193 Mich. 390, apply to the facts now before us. Plaintiff had already alighted from the car, closed the door, taken a step or two, and the car had started up. Defendant also relies upon our holding in *Langford* v. *Rogers*, 278 Mich. 310. In that case, the owner of the car had attached a bobsled and a toboggan behind his car, on which were loaded the plaintiff's decedent and other children who were being transported to the place where they were to go coasting. The defendant himself was riding on the toboggan when the accident occurred, and plaintiff's decedent was actually being transported

by the defendant's car at the time. The facts distinguish the case from the one at bar. In *Hunter* v. *Baldwin,* 268 Mich. 106, the parties were about to start on the return trip, the car would not start, plaintiff proceeded to crank it and was injured when the automobile which was in gear started up. Defendants claimed that the relationship of guest passenger existed and that defendants would be liable only for gross negligence or wilful and wanton misconduct. We rejected this theory and upheld verdict and judgment for plaintiff on the ground that the defendants owed a duty to plaintiff, whom they had asked to crank their car, not to leave the same in gear and that they must respond in damages when the jury found them guilty of ordinary negligence.

In the case before us, the act of transportation of the plaintiff had ended. Plaintiff was no longer within the guest passenger act and the guest passenger act has no bearing in the case. It was not necessary for the plaintiff to prove Arnold guilty of gross negligence or wilful and wanton misconduct before she could recover damages.

Is the question whether Arnold was guilty of ordinary negligence an issue of fact to be submitted to the jury? On the day of the accident, Arnold had driven for some distance on a street covered with ice and snow and must have known the slippery condition; he also knew that the street sloped from the center toward the gutter, and must have known the condition of the street where he stopped his car two or three feet from the gutter next to the terrace. He knew that plaintiff after alighting was in the space of two or three feet between the side of his car and the terrace, plaintiff not having had time to remove herself from this place of possible danger when the car skidded sideways toward the gutter.

He started his car, turned it toward the higher center of the slippery street while the plaintiff was still between the car and the terrace. The car did skid toward the gutter 14 to 18 inches, plaintiff was struck by the rear fender and injured. If the question whether Arnold was negligent in thus starting his car toward the center of the street under these circumstances and conditions is a matter on which the minds of reasonable men might differ, the question of his negligence is one for the jury.

The facts we have recited were established by the testimony, and we have repeatedly held that a jury may draw reasonable and legitimate inferences from established facts. Negligence may be inferred from the facts and circumstances. Physical facts may justify a jury finding that defendant is guilty of negligence. *Faustman* v. *Hewitt,* 274 Mich. 458; *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich. 586. Negligence may be inferred from circumstances which place the case within the field of legitimate inferences from established facts. *Fish* v. *Railway,* 275 Mich. 718. The proofs adduced by plaintiff establish that in starting his automobile, Arnold turned toward the center of the street, slightly upgrade, and the rear wheels skidded 14 to 18 inches toward the gutter. If Arnold knew, or should have known, that starting his automobile turning toward the center of the street would likely cause the rear wheels to skid toward plaintiff, he should have guarded against the result. *Corey* v. *Hartel,* 216 Mich. 675. Where the driver of a tractor and trailers swerved the vehicle toward the center of a street slippery with ice, in so doing causing the rear trailer to skid injuring plaintiff standing near the curb, we said:

"Defendant further claims that the mere skidding of the trailer does not constitute negligence. It

became a question for the jury to determine whether defendant's driver drove in a safe manner on a crowned road covered with ice, and also whether he made a sudden turn of the truck so as to cause the trailer to skid and injure plaintiff. It did not require expert testimony to show what is in everyone's knowledge: that one is apt to slide or skid on a slippery pavement and particularly so when making a sharp turn with a vehicle. The testimony does not show that the skidding was unpreventable. It is within the general or common knowledge of jurors, as well as almost every one else, that unless one moves very cautiously on an icy pavement, he is apt to skid, slide, or fall. While the jurors may not make use of their own private or secret information concerning the matter at issue, they must, in order to act intelligently in the determination of a case, view the evidence presented in the light of their general knowledge of the field embraced within the scope of the inquiry.'' *Deyo* v. *Detroit Creamery Co.*, 257 Mich. 77, 83.

We hold that under the facts of this case, the question whether Arnold was guilty of negligence was an issue of fact to be submitted to the jury.

Was plaintiff guilty of contributory negligence as a matter of law? If plaintiff had lingered or loitered in a place of possible danger, the rule might be different. However, the proofs show that Arnold started the car almost immediately, when plaintiff had taken only a step or two after closing the car door. Plaintiff had neither the time nor opportunity to reach a place of safety on the slope of the terrace when the rear of Arnold's automobile skidded and struck her. Plaintiff cannot be held to be guilty of contributory negligence as a matter of law and the most that defendant can insist upon is that contributory negligence was an issue of fact to be passed upon by the jury. We find no error was

committed by submitting to the jury the issues whether Arnold was guilty of negligence or whether plaintiff was free from contributory negligence.

Plaintiff cross-appeals, claiming that the verdict was grossly inadequate, against the great weight of the evidence, and that therefore the court erred in refusing to grant plaintiff's motion for new trial on that ground. The only testimony in the record showing the amount actually expended by plaintiff for hospital and medical attendance was given by plaintiff's physician, Doctor Adams, as follows:

"The hospital bill was $193.10 and that would be a reasonable value for the 5 weeks and 2 days that she stayed there at the hospital. Dr. Hickman's bill is $15, Dr. Clary's $200, and mine $130. There were some other medical expenses I think for some drugs, in fact she was given some prescriptions, which I did not furnish. These charges for medical attendance are reasonable."

Obviously at least a part of this testimony was hearsay—however, no objection was made. There is no testimony in the record as to the amount of money (if any) expended by plaintiff for "other medical expenses * * * drugs * * * prescriptions." The jury awarded plaintiff $547.60, which is $9.50 in excess of the amount of actual expenses proven to have been incurred by plaintiff, assuming that the above-quoted testimony establishes plaintiff's payment of or liability for these expenses. Presumably the $9.50 was to cover the expense of ambulance trips. The ambulance driver who took plaintiff from her home to the hospital, and from the hospital to her home, testified:

"Mr. Baron Arnold arranged with me to go and he went too. * * * The two bills for ambulance trips totalled something like $9.50 for both trips,

which was a reasonable value for that service. It is the usual charge for those in that community and I don't believe it has been paid."

There is no proof that the ambulance expense was paid by plaintiff or charged to her. We can only indulge in speculation whether the jury awarded any particular amount for permanent injuries or for pain and suffering. The court declined to submit to the jury the question whether plaintiff's subsequent impairment of hearing or vision might be considered by the jury in arriving at the amount of damages. The medical testimony was:

"My record shows that her age was 77 years when I saw her. * * * I don't believe there was any evidence of any injury to her face or head, that I saw. So far as I could ascertain the injury was limited to the shoulder, thigh, and the arm where it was fractured. From my examination I found nothing that would indicate any injury to the skull, eyes or the face."

Plaintiff's testimony as to injury to her neck or spine was objected to and was stricken by the court without objection. Plaintiff had impairment of hearing, and cataracts on her eyes, before the accident. No medical testimony was offered to show any connection between the accident and plaintiff's impairment of vision, but the court allowed plaintiff to testify that she was "much harder of hearing now than I was before." There was no testimony sufficient to take to the jury the question of damages for permanent injury to plaintiff's hearing or vision and no error was committed in declining to submit the same to the jury.

There is no doubt that plaintiff's injuries caused considerable pain and suffering, though not proven to be of a permanent nature. Were this court to

determine whether the amount awarded plaintiff was inadequate to compensate for plaintiff's pain and suffering, we would have no hesitation in so finding. It is within the realm of possibility that the jury reached a compromise verdict as to damages for pain and suffering, the proofs showing that Arnold paid for plaintiff's care for two months after she was returned from the hospital. In the minds of jurors, this payment by Arnold may have been considered as a sufficient allowance for pain and suffering. We do not substitute our opinion for that of the jury.

The court gave the jury full instructions as to the allowance of damages for pain and suffering, including future pain. In so doing, the court expressly charged the jury it might find damages for plaintiff for permanent injuries, because of future pain and suffering. There was an entire absence of proof of permanent injuries. Plaintiff has no ground for complaint that the instructions were less favorable than plaintiff was entitled to, as to allowing damages for permanent injuries, pain and suffering, in view of the record before us.

The court did not err in refusing to grant plaintiff's motion for a new trial on the ground of inadequate damages. Trial courts have a large measure of discretion in the matter of granting new trials and this court will not interfere unless the abuse of that discretion is palpable. *Graeger* v. *Hager*, 275 Mich. 363, and many cases there cited. There is no claim that improper methods were used by counsel for either party in presenting this case to the jury. There is no claim of appeal to sympathy, bias or prejudice. The case was fairly presented. No question is raised as to the fairness of the charge, except on the one question we have discussed.

"The adequacy of amount of a verdict is also generally a matter for the jury. We do not sub-

stitute our judgment on this question unless a verdict has been secured by improper methods, prejudice or sympathy. *Michaels* v. *Smith,* 240 Mich. 671. No such showing has been made, nor is the verdict so inadequate as to shock the judicial conscience. *Watrous* v. *Conor,* 266 Mich. 397." *Campbell* v. *Brown,* 276 Mich. 449, 454.

In *Sebring* v. *Mawby,* 251 Mich. 628, this court said:

"The law furnishes no exact rule by which damages for pain and suffering can be measured. Their determination must necessarily be left to the good sense and sound judgment of the jury in their view of the evidence. It has frequently been said by courts and text-writers that the award of the jury will not be disturbed unless it is so great as to shock the judicial conscience, or unless it was induced by something outside of the evidence, such as passion or prejudice. There is no claim of any such influence in this case. In view of the evidence, we cannot say that the verdict was excessive."

In *Cleven* v. *Griffin,* 298 Mich. 139, we also said:

"No complaint is made by appellants that the jury was not properly instructed as to the element of damages. No claim is made that the verdict was obtained by improper methods, prejudice or sympathy. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous* v. *Conor,* 266 Mich. 397; *Weil* v. *Longyear,* 263 Mich. 22. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood* v. *Earl Paige & Co.,* 239 Mich. 485. We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. *Watrous*

v. *Conor, supra; Michaels* v. *Smith,* 240 Mich. 671.
The verdict was within the range of the testimony
and not excessive.''

See, also, *Nezworski* v. *Mazanec,* 301 Mich. 43.

We cannot substitute our opinion for that of the
jury as to the proper amount of damages to allow
plaintiff for pain and suffering.

Judgment affirmed, with costs to plaintiff.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUT-
ZEL, BUSHNELL, and SHARPE, JJ., concurred.