*42 Kelly, J.
(dissenting). Today the majority ignores the command of settled Michigan precedent and puts us out of step with the position embraced by virtually every other state.[1] Because the initial jury rendered a flawed verdict, it was altogether appropriate for the trial court to grant a partial new trial. No error is alleged with respect to the second jury’s verdict. Accordingly, I would sustain it and affirm the opinion of the Court of Appeals.
i
Where a verdict in a civil case is inconsistent, self-contradictory, or incongruent, it must be set aside and a new trial granted. Harrington v Velat, 395 Mich 359, 360; 235 NW2d 357 (1975), quoting 66 CJS, New Trial, § 66, pp 197-198. See also Bias v Ausbury, 369 Mich 378; 120 NW2d 233 (1963); 58 Am Jur 2d, New Trial, § 129, pp 335-336; Bartholomew v Walsh, 191 Mich 252, 261-262; 157 NW 575 (1916). The first jury in this case rendered such a verdict.[2]
Also, it is without question that Michigan law requires a new trial where the verdict is against the great weight of the evidence. See MCR 2.611(A)(1)(e). Longstanding precedent establishes that a personal injury jury verdict that awards damages for medical expenses, yet awards nothing for pain and suffering is *43 against the great weight of the evidence. Weller v Mancha, 353 Mich 189; 91 NW2d 352 (1958); Fordon v Bender, 363 Mich 124; 108 NW2d 896 (1961); Mosley v Dati, 363 Mich 690; 110 NW2d 637 (1961). In this case, as in Fordon:
The jury resolved the dispute in plaintiff’s favor by its verdict, which included damages for plaintiff’s medical expenses. The jury’s verdict, however, manifests a disregard of the court’s quoted instruction by its failure to award damages for pain and suffering. Once the jury resolved the causation dispute, the great weight of the evidence compelled it to award plaintiff damages for the pain and suffering which naturally followed such injuries found by the jury to have been proximately caused by defendants. [Id. at 125-126 (emphasis added).]
In this case, the court instructed the first jury on the elements of damages that it was required to consider, pursuant to SJI2d 50.01, 50.02. That instruction provided, in part:
You should include each of the following elements of damage which you decide has been sustained by plaintiff to the present time:
a. physical pain and suffering
b. mental anguish ....
The jury disregarded these instructions. It found defendant liable and awarded damages that matched the exact amount of plaintiff’s medical expenses. Its award of actual damages, coupled with the nature of plaintiff’s injuries necessitating surgery, compels the conclusion that the jury found injuries that included pain and suffering. Its verdict was both inconsistent with the judge’s instructions and contrary to the great *44 weight of the evidence under the clear holdings of Weller, Fordon, and Mosley.
The cases relied on by the majority do not support its conclusion. They leave undisturbed the rule that a verdict against the great weight of the evidence requires a new trial. Instead, they stand for the general proposition that the court should not substitute its judgment for that of the jury on factual questions. In fact, the reasoning they employ appears to support, not conflict with, the trial judge’s decision in this case.
Brown,[3] the case relied on most heavily by the majority, is distinguishable from this case. The distinction lies in the fact that the verdict in Brown was not for actual damages, alone, but exceeded actual damages by $9.50. There was evidence that the excess was the amount of the plaintiff’s ambulance fare, but there was no evidence that the plaintiff was charged for ambulance services.
Moreover, there was evidence in Brown that the defendant paid for various of the plaintiff’s expenses during the two months after her release from the hospital. The Court considered this evidence and decided that the jury may have believed this adequate compensation for present pain and suffering and thus awarded only a minuscule additional amount. Additionally, the Court pointed to other factors suggesting that the jury actually had followed its instructions that it consider awarding compensatory damages.
It concluded that the jury may have determined a higher award to be unjustified by the proofs. The judge observed that the lower award could have been *45 derived from the paucity of evidence showing that the plaintiffs pain and suffering was permanent. Thus, the Brown Court denied a new trial, refusing to speculate on the purpose behind the jury’s decision to award a small amount of excess compensation.
By contrast, in this case, plaintiff received nothing whatsoever beyond her medical expenses. Hence, there was nothing about which the trial court could speculate. Clearly, no damages for pain and suffering were awarded.
n
Defendant insists that the issue before us centers on the trial judge’s response to the question submitted by the first jury shortly before it rendered its decision.[4] The jury’s question was whether damages must be awarded upon a finding of negligence. The response was: a jury may find negligence and award no damages. It was legally correct.[5] If, for example, *46 the jury found that the defendant’s acts were negligent, but not the proximate cause of the plaintiff’s injuries, it would find no damages. It could make the same finding in the presence of negligence and proximate cause where no damages had been proven. Here, because the jury failed to award compensatory damages despite clear instructions and unrebutted, credible evidence[6] of pain and suffering, the verdict was against the great weight of the evidence.
m
The majority contends that later revision of the bases for granting new trials resulted in the de facto overruling of Weller, Fordon, and Mosley. It postulates that the decisions “are no longer relevant” because MCR 2.611(A) alone provides the bases for setting aside a jury verdict. I disagree.
The court rule allows for a new trial where a verdict is contrary to the great weight of the evidence. Weller, Fordon, and Mosley identify factual instances where a court found a verdict was contrary to the *47 great weight of the evidence. As the majority indicates, Weller provides:
It is apparent that no consideration was given by the jury to the additional elements of the pain and suffering of the deceased . . . and, therefore, the damages awarded to plaintiff were overwhelmingly against the evidence. . . . [Weller, supra at 195-196.]
MCR 2.611(A) represents a codification of the principles in Weller, Fordon, and Mosley. It is consistent with those opinions and does not in the least nullify them.
The jury verdict in this case was virtually identical in form to those generated in Weller, Fordon, and Mosley. Plaintiff justifiably relied on the principles found in those cases for valid reasoning to demonstrate that the first jury returned a verdict contrary to the great weight of the evidence. Since the judge’s decision to award a partial new trial on damages was consistent with those cases and with the court rule, it was not an abuse of discretion.[7]
IV
The majority concludes that the trial court abused its discretion by failing to review the evidence for a violation of the court rule. The opinion suggests that the judge improperly substituted his opinion for that *48 of the jury when he “expressed views regarding the credibility of witnesses.” Ante at 39-40. However, the majority does its own indirect assessment of witness credibility when referencing selective portions of the testimony that reflect plaintiff’s case as too weak to warrant a new trial. Ante at 31-32. Thus, the majority states that its decision is based on the court rule. However, it intimates that defendant produced sufficient evidence to avoid a finding that the verdict went against the great weight of the evidence. It stresses that the question centered on credibility, something exclusively in the domain of the trier of fact. By so casting the evidence and analysis, the majority avoids showing appropriate deference to the trial judge’s fitting efforts to rule on the legality of the verdict.
As our Court of Appeals has observed:
[T]he standard used in this case is different than that involved in reviewing a summary disposition, directed verdict, or judgment notwithstanding the verdict, and we are not of the view that the existence of any competent evidence to support the verdict compels reversal of the grant of a new trial. [Arrington v Detroit Osteopathic Hosp (On Remand), 196 Mich App 544, 560-561; 493 NW2d 492 (1992) (emphasis added).][8]
Reflecting on the struggle to give appropriate deference to the trial court’s judgment and respect for the *49 collective wisdom of the jury, one legal scholar has written:
If, having given full respect to the jury’s findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial. [Wright, Law of Federal Courts (4th ed), § 95, p 635.]
I believe the proper standard to apply to this case allows considerable deference to the trial judge’s decision while, at the same time, respecting the collective wisdom of the jury. That deference was given by Michigan courts in Davis and Arrington and was described by Professor Wright.
Without question, the mere fact that defendant produced an expert witness does not foreclose the possibility that the first verdict was contrary to the great weight of the evidence. Consider the substance of the testimony from defendant’s only witness, Dr. Kelly. The defense’s physician acknowledged on cross-examination that he had not performed a shoulder surgery of the type at issue in “five or six years.” He admitted that only forty percent of his professional time is spent dealing with patients directly.
In evaluating plaintiff, Dr. Kelly spent only twenty to twenty-five minutes. He declined to review her medical records or operative notes from plaintiff’s surgery; he failed to review her physical therapy records; he declined to order orthopedic tests, such as an mri or an arthrogram; he had no knowledge of the prior tests that had been performed on the patient.
Hence, when the majority references select portions of Dr. Kelly’s testimony it misleads the reader *50 with the implication that they constitute a basis for reversal of the lower court’s grant of new trial. Such a conclusion is unsubstantiated, given the majority’s disregard for the need, when reviewing the grant of a new trial, to balance the deference due the jury with that due the judge. In my opinion, the testimony of Dr. Kelly, standing alone, is insufficient to support a conclusion that the trial judge abused his discretion in granting a new trial.
The majority’s “underlying facts” section cites Dr. Blasier’s inability to locate the tear in plaintiff’s rota-tor cuff during surgery. It implies that the nondiscovery lends support to its finding that the trial judge erred. The same section also notes that x-rays failed to show evidence of the tom rotator cuff. This is a lopsided version of the evidence.
As Dr. Blasier explained in his testimony, and Dr. Kelly acknowledged, the tear suffered by plaintiff would not have been visible from the vantage point of the surgeon during surgery. This is because it occurred on the underside of the rotator cuff muscle and would have been obscured from the surgeon’s view by the top of the muscle. Moreover, Dr. Kelly acknowledged on cross-examination that x-rays do not show partial muscle tears or impingements of the kind complained of by plaintiff. Therefore, the doubt that the majority impliedly casts on plaintiff’s credibility by suggesting that her injuries, if real, would have appeared on an x-ray is unavailing.[9]
*51 Indeed, the evidence of pain and suffering is undisputed and unimpeached. Dr. Kelly, the only defense witness, addressed the subject of pain three times, each time only to acknowledge its existence. Plaintiffs witnesses, on the other hand, testified in great detail about the pain Ms. Kelly endured. Dr. Blasier stated that each time plaintiff merely raised her arm, she experienced pain. There was testimony from Donald Kuck, plaintiff’s physical therapist, Ernest Kelly, plaintiff’s husband, and plaintiff, herself. Each presented the jury with a detailed description of the nature and severity of the pain.
Therefore, I disagree that the trial judge erroneously granted a new trial, and I reject the proposition that the trial court reviewed the evidence under an inapplicable standard. Inasmuch as the first jury failed to consider an award of noneconomic damages, its verdict was properly found to be contrary to the great weight of the evidence. The testimony of a lone defense witness does not render the trial court’s finding unreasonable. Rather, the great weight of the evidence easily could have been found to militate against the first jury verdict, notwithstanding the brief testimony offered by Dr. Kelly. There was no abuse of discretion.
v
I agree with the majority that “the jury is free to credit or discredit any testimony” offered at trial. Ante at 39. However, the jury may not disregard or misapply clear instructions from the court. In this case, the jury was instructed to include in its verdict “elements of damages” for “physical pain and suffering” as well as “mental anguish.” It neglected to do so.
*52 The settled law of our state requires an award of noneconomic damages where a jury finds actual damages that necessarily involve pain and suffering. A verdict that fails to consider these aspects is contrary to the great weight of the evidence. Such a verdict was rendered in this case. That fact alone provides a sufficient basis to affirm the trial judge’s decision to award plaintiff a new trial.
The majority’s finding that the trial court abused its discretion by not citing one of the bases in MCR 2.611 as support for its decision is in error. The court rule codifies the great weight of the evidence standard applied in the Weller trio of cases. The trial court did review the evidence under a great weight of the evidence standard. That is, after all, the standard for which the Weller cases are known.
The evidence of plaintiff’s pain and suffering in this case was unrebutted and unimpeached. The only witness testifying against plaintiff was a physician who acknowledged that plaintiff had experienced rotator cuff pain. Even if defendant’s expert had denied the pain, denial of the motion for new trial would have been unjustified, given the quality and quantity of the evidence of plaintiff’s pain.
Thus, if a factual dispute existed, as suggested by the majority’s “underlying facts and procedural history” section, it is of no consequence. It could not render the trial judge’s decision an abuse of discretion. Accordingly, the trial court’s decision to grant a partial new trial was correct. The Court of Appeals decision upholding the second jury’s verdict should be affirmed.
Cavanagh, J., concurred with Kelly, J.

 See Anno: Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, But Failing to Award Damages for Pain and Suffering, 55 ALR4th, pp 186-232.

 The majority submits that inconsistent and incongruent verdicts are invalid grounds for granting a new trial because those very words do not appear in MCR 2.611. I find this approach unduly rigid. Under Michigan law, an inconsistent verdict means a legally irreconcilable one. Hence, a legally irreconcilable verdict is contrary to law. MCR 2.611(A)(1)(e) provides that a verdict contrary to law is grounds for a new trial.

 Brown v Arnold, 303 Mich 616; 6 NW2d 914 (1942).

 The majority notes that all parties agreed to the substance of the judge’s written response to the jury’s query. I find this fact unremarkable, given the propriety of, and the lack of grounds for objection to, the judge’s answer.

 The majority fails to acknowledge that the jury found more than mere “negligence,” given its decision to award actual damages. It is blackletter law that plaintiff would not be entitled to any award at all if defendant’s “negligence” did not proximately cause her injuries. Therefore, we must conclude that the first jury found proximate cause as well as negligence. This resulted in liability.
Indeed, there is a distinction between the concept of negligence in the broadest sense, encompassing all four traditional elements, and negligence in the sense that it is commonly used. In common usage, “negligence” describes a mere breach of duty, a notion entirely severable from the elements of proximate cause and damages. As Prosser & Keeton, Torts (5th ed), § 30, pp 164-165, observes:
A failure on the person’s part to conform to the standard required: a breach of the duty. These two elements go to make up *46 what the courts usually have called negligence, but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be. [Emphasis added.]
See also Davis v Thornton, 384 Mich 138, 146; 180 NW2d 11 (1970) (finding that once negligence is found, “[t]he jury must then bridge the gap between the plaintiff’s injuries and the defendant’s negligence. This is the determination of cause and the remoteness of effect.”).

 Had the jury not found plaintiff credible, it would not have awarded her actual damages. Having found an injury caused by defendant’s negligence and an injury and surgery that naturally occasion pain, it was improper for the jury to avoid some award of noneconomic damages. That is the law of our state as set forth in Weller, Fordon, and Mosley, and the law that should govern our analysis of this case.

 The majority contends that the trial court abused its discretion by not granting a new trial on one of the bases codified in MCR 2.611. The trial court based its ruling on the principles found in the Weller trio of cases. Those cases involved decisions granting new trials because the verdict was against the great weight of the evidence. Such verdicts are grounds for a new trial under MCR 2.611(A)(lXe). The majority’s statement to the contrary, this is the standard under which the trial court reviewed the evidence in this case.

 See also Davis v Belmont Creamery Co, 281 Mich 165, 169; 274 NW 749 (1937) (finding a jury verdict to be against the great weight of the evidence despite the existence of a question of fact sufficient to avoid a judgment notwithstanding the verdict); Dean & Longhofer, Michigan Court Rules Practice, New Trials, § 2611.7 (West, 1998) (“Between these extremes lies an area in which the proof begins to weigh heavily against the verdict, where the trial judge’s discretion must be accepted as the best guide to whether fairness requires a new trial.”).

 The record reflects that mri tests, viewed by medical professionals as the most accurate means of diagnosing and identifying partial muscle tears, showed plaintiffs tom muscle before and after surgery. Additionally, Dr. Blasier testified that, once he injected dye into plaintiffs shoulder muscle, he was able to view the tear in an x-ray.