SUTTON v. BENJAMIN.

1. FRAUD—REPRESENTATION OF VALUE—OPINION.
    Where a purchaser inspects the property before purchase, representations of value, unless the seller has peculiar knowledge of the property and its uses and the purchaser is without such knowledge, are regarded as mere expressions of opinion and not statements of fact.[1]

2. SAME—EXCHANGE OF PROPERTY—MISREPRESENTATIONS.
    In an action against the sellers and their brokers for fraud in an exchange of property, representations as to the condition and extent of the sellers' property, if false, are actionable, and plaintiffs are entitled to recover against the parties responsible for such misrepresentations.[2]

3. SAME—BROKERS RESPONSIBLE FOR MISREPRESENTATIONS.
    In such action, a verdict against the brokers, who made the misrepresentations, and absolving the sellers, who neither made any misrepresentations concerning the property, nor had knowledge of them, was not inconsistent.[3]

4. SAME—EXCHANGE OF PROPERTY—VALUE QUESTION FOR JURY.
    The question of the value of plaintiff's property, given in exchange for that of defendants, where the evidence was conflicting, was for the jury.[4]

Error to Genesee; Black (Edward D.), J.    Submitted January 7, 1925.    (Docket No. 40.)    Decided May 14, 1925.

Case by George F. Sutton and another against J. Judson Benjamin and Harold F. Benjamin, copartners as Benjamin & Son, and others for fraud in an exchange of real estate.    Judgment for plaintiffs.    Defendants Benjamin bring error.    Affirmed.

[1]Exchange of Property, 23 C. J. § 25; Fraud, 26 C. J. § 110; [2]Exchange of Property, 23 C. J. §§ 23, 24; [3]Fraud, 27 C. J. § 226 (Anno); [4]Id., 27 C. J. § 270.
    As to whether expression of opinion is fraud, see note in 34 L. R. A. 417.

*Farley & Selby* and *Charles A. Withey*, for appellants.

*James S. Parker* and *M. L. Gochenour* (*Hugh N. Parker*, of counsel), for appellees.

BIRD, J.    Defendants Frank and Edith Hughes were residents of Flint, and were the owners of a grist mill situate at South Whitley, Indiana.    They placed it for sale in the hands of defendants Benjamin, who were real estate brokers.    The Benjamins sold the mill to plaintiffs, taking residence property in Flint in payment therefor.    Plaintiffs moved to South Whitley, and took charge of the mill, and have since operated it.    After taking possession of the mill Sutton claims he learned that the Benjamins had misrepresented the value, extent and condition of the mill property, and he brought this action at law to recover his damages.    A jury trial resulted in a verdict in his favor of $6,000 against defendants Benjamin.    The jury returned a verdict of "no cause" against defendants Hughes.

1. The principal ground of complaint is that the trial court was in error in submitting the case to the jury.    It is the claim of defendants that no case was made for the jury.    This necessitates an examination, to some extent, of the testimony.    The plaintiffs testified that defendant J. Judson Benjamin made the following representations to them concerning the property:

"*Q.* You may tell the court and jury what was said upon that occasion when Mr. J. Judson Benjamin, your husband, and yourself were present in his office.

"*A.* Mr. Benjamin said he had this mill property, was a splendid trade for us, and that it was worth, the mill was worth at least $20,000, and that the machinery was in a splendid running condition, belts and engine, boilers, everything in first-class condition, and that the mill property, the land extended back

to the river.    He also said that the taxes were all paid up to date, and that the insurance was paid up to date, and he said that the grinding business was $36 per day.    He said there were no other place in town where they ground feed—and that there was an incumbrance of $9,000 against the mill, and it was held by the Farmers State Bank of South Whitley, Indiana."

Benjamin's representations as to the value of the mill should be regarded as mere expressions of. opinion. *People* v. *Jacobs*, 35 Mich. 36.    Especially is this so since plaintiff had the opportunity to, and did inspect the property before purchase.    Representations of value are usually regarded as matters of opinion.    See 35 L. R. A. 418, note, subd. *b*.    Although statements of value, when the purchaser has had no opportunity to examine the property, have been held to be statements of fact.    *Pinch* v. *Hotaling,* .142 Mich. 521. Representations of value have also been held statements of fact under circumstances where the seller had peculiar knowledge of the property and its uses, and the purchaser was without knowledge.    *Kefuss* v. *Whitley,* 220 Mich. 67.    But the other statements made by Benjamin must be regarded as statements of existing facts, and, if untrue, are actionable.    The testimony tended to show that the belts and engine were not in good condition; that the taxes were not paid up to date; that the income was not $36 per day, but was only about $5.27, and that the land did not extend back to the river, and that there were two other places in South Whitley that ground feed. But counsel say that Mr. Sutton and his wife went down and looked the mill over before closing the deal. It is true, they did, but they were there only a very brief time.    Mr. Sutton knew nothing about a grist mill, and so informed Mr. Benjamin before he went there. It could hardly be expected that Mr. Sutton would, or could, verify the truth of all these statements in

the short time he was in South Whitley. The question as to whether Mr. Benjamin made these statements, and if he did, the effect of them upon the plaintiffs, were questions of fact for the jury.

2. The court charged the jury:

"I charge you, gentlemen, if you find in favor of the plaintiffs, you will find against whom you find your verdict, whether against one or more than one. If more than one, you will bring in a verdict of whom your judgment will be against, whether against Benjamin, the man who made the representations, or Benjamin and son, whatever his name is, or whether Mr. Hughes and his wife, if you find testimony in the case which fixes liability on those other parties. You will have to do that from the testimony in the case."

It is claimed that this instruction was erroneous because misleading. Counsel's conclusion is based upon *Bartholomew* v. *Welch,* 191 Mich. 252. Plaintiffs' counsel distinguish the cases on the ground that in the *Welch Case* the agent who made the false representation upon which the case was predicated was discharged and the principal held, while in the case at bar the jury returned a verdict of no cause of action against the principals, Hughes, who are not shown by the evidence to have authorized the misrepresentation, and rendered a verdict against the brokers who made the representations. We think this distinction is well taken. In the *Welch Case* the agent made the misrepresentation and the principal could be held only because of the agent's misrepresentations. When the jury acquitted the agent there was no basis upon which the principal could be held. This clearly made the verdict inconsistent. In the present case the party who made the misrepresentations was found guilty and the principal, who neither made the representations nor had knowledge of them, was acquitted. The distinction rests upon reason and the verdict was consistent in fact.

3. The final claim is that the verdict is excessive. In this connection it may be well to state the exact terms of the trade. The plaintiffs conveyed to defendant two residence properties in the city of Flint, which they valued at the sum of $17,000. Upon these properties there were two mortgages aggregating the sum of $5,360, leaving an aggregate equity in the properties of $11,640. In return for these properties the plaintiffs received the mill with a mortgage thereon of $9,000. The mill was shown to be fairly worth $4,500. In addition to this plaintiffs received $5,000 in cash.

It is defendants' claim that the testimony shows plaintiffs' equities were worth $8,640. That under these circumstances they lost the difference between that sum and the $5,000 in cash they received, which would be $3,640, and as the verdict was for $6,000 it was excessive. It is the claim of plaintiffs that their real estate was worth $11,640, over and above the mortgages. The plaintiffs' damages were this sum less the $5,000 which they received in cash, which would be $6,400, and, therefore, a judgment for $6,000 was not excessive. Upon the question of damages neither party counted the mill as worth anything, as it was shown to be mortgaged for more than its value. The question of the value of plaintiffs' real estate was for the jury. They gave plaintiffs a verdict for $6,000. They must, therefore, have found in accordance with plaintiffs' contention.

The judgment of the trial court is affirmed.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.