262 So.2d 303

CITIZENS HOSPITAL ASSOCIATION,
a Corp.

v.

Charles R. SCHOULIN.

7 Div. 35.

Court of Civil Appeals of Alabama.

May 10, 1972.

Dixon, Wooten, Boyett & McCrary, Talladega, for appellant.

Coleman & Hancock, Birmingham, for appellee.

BRADLEY, Judge.

This action arose as a result of the complaint filed by appellee against appellant, Dr. R. C. Denny and fictitious parties for negligently failing to discover and properly treat certain injuries received by appellee in an auto accident.

There were demurrers filed to the complaint by appellant and Dr. Denny. Later appellee amended the complaint by striking the fictitious parties and Count 2; demurrers were refiled to the complaint as amended and they were overruled. The appellant and Dr. Denny then pleaded the general issue.

The case was tried before the court and a jury on Counts 1 and 2 of the complaint wherein it was averred that the named defendants, Citizens Hospital and Dr. R. C. Denny, had undertaken to provide care for appellee, had failed to discover his injuries, had negligently failed to retain him for treatment, and that Dr. Denny had negligently diagnosed and prescribed treatment for appellee over the telephone.

The jury returned a verdict for appellee and against appellant, Citizens Hospital, for $5,000, thereby finding in favor of Dr. Denny. Judgment was entered based on the verdict. There was a motion for new trial, which was overruled, and from the final judgment and ruling on the motion for new trial, there was an appeal taken to this court by the appellant.

The evidence reveals that in January 1968 the employees of Beaunit Mills in Childersburg, Alabama were on strike. On January 27, 1968 appellee, an employee of Beaunit Mills, was walking the picket line along with several other employees. Around midnight of that day, appellant and the other picketers were relieved and appellant went with two other picketers to visit a friend in Munford, Alabama.

Late that night the appellant, in the company of his two fellow employees, left for Childersburg. The two friends were in the front seat and appellant was in the back seat. The night was foggy and the driver entered a dead end street, and before he could stop, collided with a tree at the end of the street.

Appellant was taken out of the car and placed beside the road. A passing motorist was flagged down and persuaded to take appellant and the other two occupants of the wrecked car to the hospital in Talladega, Alabama. En route to the hospital, appellee made frequent complaints about his back hurting.

The appellee arrived at the Citizens Hospital in Talladega somewhere between 4:00 and 4:30 a. m. on the night in question. The driver blew the horn of his car, appellee was taken out of the car, and the car departed.

The tendencies of the evidence introduced on behalf of the appellee showed from this point on that two orderlies came out to the car, removed him from the car, placed him on a movable stretcher and rolled him to the emergency room. The two friends of appellee stated that they were with him at all times except when one of them went to a telephone to call Mr. W. G. Carroll.

Appellee and his witnesses stated that they told Mrs. Yates, the nurse on duty in the emergency room of appellant, that appellee's back had been injured in an auto accident and it might be broken.

The testimony was then to the effect that Mrs. Yates asked appellee to wriggle his toes, which he did, with Mrs. Yates commenting that anyone with a broken back could not wriggle his toes.

Then, according to the testimony for appellee, Mrs. Yates commenced to manipulate appellee's legs, and it was shortly after this manipulation that appellee felt his lower trunk get numb.

It was also the effect of the testimony for appellee that appellee, along with his friends, was asking Mrs. Yates to get a doctor, that he had no local doctor. According to appellee and his witnesses, Mrs. Yates stated that appellee needed no doctor, that she considered herself to be a pretty good doctor and there was nothing wrong with him.

Nevertheless, Mrs. Yates did call Dr. R. C. Denny, the doctor on call for emergency room duty, advised the doctor that she had examined appellee and could find nothing wrong with him, and that appellee and his friends had been drinking.

Dr. Denny stated that he remembered Mrs. Yates calling him and that he prescribed a shot of codeine. He further stated that he advised Mrs. Yates to admit appellee and have x-rays and other diagnostic tests made on him. He denies that Mrs. Yates informed him that appellee was complaining of a back injury, or that she informed him that appellee could or could not walk.

The witnesses for appellee stated that during the time they were trying to get Mrs. Yates to admit appellee to the hospital, she was informed that appellee had Blue Cross insurance through Beaunit Mills, but they were allegedly told that since Beaunit was on strike, the insurance was no good.

Mr. W. G. Carroll, who was now at the hospital, offered Mrs. Yates a cash deposit if she would admit appellee to appellant as a patient, but was told there was no need for admission because there was nothing wrong with appellee. Carroll stated that he then informed Mrs. Yates that appellee had urinated on himself without his having been aware that he had done so.

After Mrs. Yates refused to admit appellee, so the evidence goes, appellee was then placed in Mr. Carroll's car and taken to appellee's home where he was placed in bed.

The testimony then was to the effect that appellee slept fitfully for a few hours,

complaining during the period he was awake, that his back hurt.

Appellee's wife stated that she assisted appellee to the bathroom and attempted to give him an enema.

On the following day, appellee discovered blood in his urine, and he was then taken by auto to a hospital in Sylacauga, where it was discovered that he had a broken back. Six days later he was transferred to University Hospital in Birmingham, where he remained until February 29, 1968.

Appellee claims that he had then, and still has, a numbness in one of his legs.

The tendencies of the evidence for appellant reveal that appellee was carried into the hospital by his two friends, that two orderlies met them in the hallway, placed appellee in a wheelchair and carried him to the emergency room, where Mrs. Yates, the emergency room nurse, examined appellee and called Dr. Denny. This occurred somewhere between 4:20 and 5:00 a. m. Appellant's witnesses further state that appellee's two friends were not with him in the emergency room, that no one other than the injured and hospital personnel are allowed in the emergency room. It was contended by appellant's witnesses that appellee and his friends had been drinking. Appellee denies that they had been drinking.

Mrs. Yates testified that appellee was dirty and unshaven and appeared to be under the influence of intoxicants and was complaining bitterly about his back hurting. She denied manipulating appellee's legs. She also stated that appellee asked her to call a doctor. She called Dr. Denny, who was the emergency room doctor on call that night, and gave him the results of her findings.

Mrs. Yates stated that Dr. Denny told her to give the appellee a grain of codeine for his pain and to advise him he could stay in the hospital and the doctor would be there in about an hour. She denied that Dr. Denny told her to have x-rays made of appellee.

According to Mrs. Yates, the appellee, upon being informed that it would take the doctor about an hour to get to the hospital, stated: "Hell no, he didn't want to stay in the hospital if he had to wait an hour to see a doctor." Mrs. Yates then said that appellee was then taken away from the hospital in a private car.

In response to a question put to him by Mrs. Yates, concerning how he planned to pay his bill, appellee is supposed to have said that he had insurance and Mrs. Yates told him she did not think his insurance would cover his bill, but if not, he would be billed.

Mrs. Yates stated that she did not tell the doctor that appellee could not move his legs because she thought he could move them. She also stated that she did not tell the doctor that appellee was numb because appellee did not say that he was numb. Mrs. Yates further stated that she did not see Dr. Denny at the hospital before she left around seven a. m.

Mrs. Yates also stated that she did not remember saying to appellee or anyone else that appellee's insurance was no good because Beaunit Mills was on strike, and she did not remember anyone telling her that if appellee's insurance was no good, he would pay the money for appellee's admission to the hospital.

Dr. Denny testified that Mrs. Yates called him and told him there was a man in the emergency room complaining of chest and back pains, appeared to have been drinking, and she didn't think the man was seriously hurt, although he was "complaining quite a bit." He stated that he ordered her to give the man a grain of codeine, that it would be best to keep him at the hospital, take x-rays and other laboratory tests. Dr. Denny says that he told Mrs. Yates to admit appellee to the hospital.

Dr. Denny stated that Mrs. Yates did not tell him appellee could not walk nor

that he did not have any feeling in his legs.

Dr. Campbell, a practicing physician in Talladega, testified that a person with a comminuted compression fracture of the third lumbar vertebrae could become numb due to a severed nerve or by swelling in the area of the fracture exerting pressure on the nerve causing numbness. He stated after having some of the evidence relative to appellee's injury related to him, that the numbness could have been caused by a severed nerve, which symptom would have revealed itself immediately after the injury or if the numbness was due to the swelling, such numbness could appear at any time.

Dr. Campbell stated after looking at reports and x-rays that he did not consider appellee's numbness to be due to a severed nerve. He further stated that he did not believe that the numbness in appellee's body was caused by manipulation, if, in fact, Mrs. Yates had manipulated appellee's legs.

Dr. Campbell did admit that reports and charts on appellee showed that the vertebrae was compressed and displaced, and that this displacement could cause damage to the nerves and that a person with an injury of the type suffered by appellee should be kept flat on his back.

Dr. Campbell further stated that a person with symptoms such as this, i. e., inability to move his legs and experiencing pain in his lower back, would, in keeping with the standards of care and treatment extended to patients by doctors in that area, warrant a visit by a doctor. He further stated that it would have been the duty of the nurse to relate to the doctor on duty not only the patient's vital signs, but the fact that the man could not walk, if in fact he could not walk, and that he had urinated on himself without having been aware that he had done so. This, according to Dr. Campbell, would materially help the doctor in making up his mind whether to see the patient immediately or postpone a visit until later.

Dr. Campbell further testified that if a person has an injury and it is aggravated and no further examinations are made after the initial injury, it is difficult to ascertain what portion of the injury was due to the initial trauma or the aggravation.

There are four assignments of error made by appellant, two of which—assignments two and three—are not argued and are deemed waived. Rule 9, Supreme Court Rules.

Assignment one contends that the trial court erred in overruling the motion for new trial. The motion had thirty-eight grounds, but appellant argues only grounds four, twelve, fourteen, thirty and thirty-eight. Those grounds of the motion not argued are deemed waived also.

Assignment of error four and ground fourteen of the motion for new trial both relate to the refusal of the trial court to give to the jury the following written charge:

"The Court charges the jury that if you believe the evidence in this case, then you cannot find in favor of the Plaintiff, Charles R. Schoulin, and against the Defendant, Citizens Hospital."

Appellant argues that the evidence was insufficient to authorize the court to give the case to the jury.

It is quite apparent to this court that there was a material conflict in the evidence concerning the admission or refusal to admit appellee to the hospital, or refusal to retain appellee in the hospital, and a material conflict in said evidence as to whether the appellant had treated appellee or refused to treat him or had caused an injury or aggravated an existing injury.

In Randolph v. Greason, 275 Ala. 89, 152 So.2d 156, our Supreme Court said:

"Appellant further insists that the trial court erred in refusing to give the affirmative charge with hypothesis for appellant. In considering this contention, we are required to view the evidence in the light most favorable to appellee.

Textile Mills, Inc. v. Colpack, 264 Ala. 669, 89 So.2d 187; Hasty v. Hasty, 260 Ala. 90, 69 So.2d 282; Aircraft Sales and Service v. Gantt, 255 Ala. 508, 52 So.2d 388. *Before such a charge is due the evidence must be clear, without conflict, and must leave nothing to be done except to draw a legal conclusion from the facts.* Railway Express Agency v. Burns, 255 Ala. 557, 52 So.2d 177; Watts v. Metropolitan Life Insurance Co., 211 Ala. 404, 100 So. 812. So considered, it is clear that there was a material conflict in the evidence. The circumstances of the case leave open a very doubtful question of whether there was an intervening cause between appellee's purported negligence and injuries to appellant. This would be a proper question for the jury." (Emphasis added.)

In the case at bar the resolution of the conflict in the evidence was for the jury. There was no error in refusing the request for the affirmative charge with hypothesis.

Appellant, in the motion for new trial, also contends that the verdict was contrary to the great preponderance of the evidence, that there was a fatal variance between the allegations and the proof, and that appellee had failed to carry the burden of proof.

■■ The cases are legion that hold no ground of a motion for new trial is more carefully scrutinized than one contending that the verdict is against the evidence. Smith v. Smith, 254 Ala. 404, 48 So.2d 546, and cases there cited. But where the trial court denies the motion, this action has the effect of strengthening the presumption in favor of the verdict. Smith v. Smith, supra. In the case at bar the trial court overruled the motion for new trial.

■ Furthermore, the cases hold that where there is evidence which, if believed, justified the verdict, motion for new trial is properly overruled. Vernon v. Prine, 277 Ala. 402, 171 So.2d 110, and Griffin v. Respress, 281 Ala. 168, 200 So.2d 469.

The evidence in the case at bar, although in material conflict, tends to show, if the jury wanted to believe it or infer from it, that appellee was told that he was not seriously hurt and was refused further examination and treatment. Further, the evidence tends to show, if believed, that appellee was injured or had an existing injury aggravated due to the manipulation of his lower extremities by the nurse in the emergency room.

■ With the case in this posture, we cannot say that the trial court erred in overruling the motion for new trial based on the grounds that the verdict was contrary to the evidence or that the appellee failed to carry the burden of proof. Neither do we consider that there was a fatal variance between the proof and the allegations of the complaint.

Appellant also argues that the verdict is erroneous because of the lack of duty on appellant to accept appellee as a patient and cites to us the case of Birmingham Baptist Hospital v. Crews, 229 Ala. 398, 157 So. 224.

In the cited case the action was for the wrongful death of a two and one-half year old girl. The facts show that Crews, the father, appeared at the emergency room of the hospital on a cold rainy day with the child in his arms. The doctor on duty in the emergency room examined the child and determined that it had diphtheria. The doctor administered oxygen and an antitoxin and advised the father that the child could not be admitted to that hospital because the hospital could not accept patients with contagious diseases. The father wrapped the child up and placed her in a closed automobile and took her home. Shortly after arriving at home, the baby died. The Supreme Court held that the hospital was not liable.

The court stated the hospital was a private rather than a public hospital, and owed no duty to the public to accept any patient not wanted by it, but it was also shown that the hospital had a rule against admitting patients with contagious diseases if such disease was diagnosed prior to

admittance. The sick child was examined in the emergency room and found to have diphtheria. Emergency treatment in the form of oxygen and antitoxin was administered by the examining physician only as an emergency measure, and then the father of the child was told by the physician in charge that they could not accept the child for care in the hospital because of the contagious disease with which the child was afflicted.

The Supreme Court said that the hospital could not be prejudiced by its extending emergency treatment to the sick child yet not admitting her for general treatment because of the nature of the disease with which she was suffering. Furthermore, the court found that the emergency treatment had not adversely affected the child's chances of recovery.

In the case at bar the patient presenting himself to appellant was not afflicted with a contagious disease, but was complaining of severe pain in his back resulting from an auto accident.

The contention, which is supported by evidence if the jury wished to believe it, is made that Mrs. Yates, the emergency room nurse and agent of appellant, failed to apprise the doctor in charge of all the patient's symptoms and, further, that she failed to keep the patient in the hospital, and to have x-rays and other diagnostic tests made on him as directed by the attending physician.

It is also contended, and there is evidence to support such contention, if believed by the jury, that Mrs. Yates negligently examined appellee by manipulating his legs to such an extent that he was injured or had an existing injury aggravated.

It is further contended that Mrs. Yates, after being told by the doctor to admit the appellee, x-ray him and administer other tests, advised the appellee that there was nothing wrong with him and refused to allow him to be kept in the hospital for further testing and treatment, and specifically failed to carry out the directives of the attending physician.

We consider the facts in the case at bar to be quite different from the facts in the cited case, and, hence, the rationale of the cited case would not be applicable to the present case.

Furthermore, the statements of Dr. Denny to nurse Yates to keep appellee in the hospital for x-rays and other tests so that the extent of his injuries could be ascertained certainly did not indicate that appellant did not wish to care for and treat appellee for his injuries.

■ Under the rationale of the *Crews* case, nurse Yates could have met appellee at the door to the hospital and said we cannot take you in, you must go, and the hospital would have been acting within its rights, but that is not what happened. Appellant acted and thereby came under an affirmative duty to exercise reasonable care in the performance of its undertaking.

■ Appellant also contends that the verdict was excessive and therefore a new trial should have been granted. Appellant also says that if any damages were proved, they were only nominal "for the short delay that would normally be required to drive from Talladega to Sylacauga."

The evidence, if the jury wished to believe it, showed that appellee could not walk into the hospital, complained bitterly of pain in his lower back, suffered numbness in his lower extremities after being manipulated by the attending nurse, had a comminuted compression fracture of the third lumbar vertebrae, passed blood through his kidneys, was confined to the hospital for a period of 35–40 days, and still suffers some numbness in his lower extremities.

The trial court instructed the jury that if they found for the appellee, they could award damages proximately caused by the wrongs complained of and there was no objection or exception to this aspect of the oral charge.

Also, the trial court refused to give a written charge requested by appellant to the effect that the jury could assess nominal damages in the event they found for appellee. There is no complaint made of the refusal of that charge.

It was decided in Whitman's Fifth Ave. Garage Co. v. Ricks, 211 Ala. 527, 101 So. 53, that:

". . . Damages for physical pain and mental anguish are in large measure discretionary, and the universal rule is not to reverse on that account unless the amount is so excessive or inadequate as to indicate prejudice, passion, partiality, or corruption—not an easy conclusion after the trial court has approved the verdict. Central of Georgia [R. Co.] v. White, 175 Ala. 60, 56 So. 574. In the present case we conclude, though not without misgiving, that the assessment should be allowed to stand."

After a careful examination of the evidence in this case and keeping in mind the action of the trial court in overruling the motion for new trial, we cannot say that the verdict was excessive.

There being no reversible error argued in brief, this case is affirmed.

Affirmed.