GREWE v MOUNT CLEMENS GENERAL HOSPITAL (AFTER
REMAND)

OPINION OF THE COURT

1. TRIAL—INCONSISTENT VERDICTS—PRINCIPAL AND AGENT—APPEAL
   AND ERROR.

   A jury verdict acquitting an agent but holding the principal
   liable is not fatally inconsistent where it is responsive to the
   pleadings, supported by the evidence and consistent with
   proper jury instructions.

2. TRIAL—INCONSISTENT VERDICTS—PRINCIPAL AND AGENT—VICARIOUS
   LIABILITY.

   A jury verdict acquitting an agent but holding the principal
   liable is inconsistent where there is no basis other than the
   actions of the agent upon which the principal could be held
   liable.

3. TRIAL—INCONSISTENT VERDICTS—PRINCIPAL AND AGENT—LIABILITY
   OF PRINCIPAL.

   A jury verdict acquitting a party agent but holding the principal
   liable is not inconsistent where there is evidence indicating
   that the liability of the principal could rest upon some other
   ground such as the negligence of an agent not made a party to
   the suit.

DISSENT BY QUINN, J.

4. NEGLIGENCE—MALPRACTICE—INSTRUCTIONS TO JURY—PRINCIPAL
   AND AGENT—VICARIOUS LIABILITY.

   *A jury finding in a malpractice suit that the defendant hospital
   was liable to the plaintiff but that the defendant doctor was not
   liable is erroneous where the judge's instruction to the jury
   precluded a finding of liability against the hospital unless they
   found that the defendant doctor was liable.*

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 75 Am Jur 2d, Trial § 346.
   76 Am Jur 2d, Trial §§ 1156–1159.
[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 214.

Appeal from Macomb, Walter P. Cynar, J. Submitted January 14, 1977, at Detroit. (Docket No. 27018.) Decided March 29, 1977. Leave to appeal applied for.

Complaint by Laverne Grewe against Mount Clemens General Hospital and Michael Fugle, D. O., for damages for injuries sustained during treatment for a dislocated shoulder. Judgment for defendants. Plaintiff appealed. Reversed and remanded, 47 Mich App 111 (1973). On remand, judgment in favor of Dr. Fugle and against the hospital. Defendant hospital appeals. Affirmed.

*Lopatin, Miller, Bindes & Freedman* (by *Michael Gagleard),* for plaintiff.

*Kitch & Suhrheinrich, P. C.,* for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. F. CAVANAGH, JJ.

## AFTER REMAND

T. M. BURNS, P. J. While at work on March 20, 1967, plaintiff received an electrical shock at about 11 p.m. He suffered a dislocated shoulder. He was admitted to defendant hospital in the early morning hours of March 21, 1967.

Plaintiff was initially seen by Dr. Hoffman. He examined the plaintiff and referred him to Dr. Fagen, an orthopedic surgeon with staff privileges, for examination of the arm. Fagen referred plaintiff to Dr. Fugle, an orthopedic resident at the hospital. Plaintiff complained that his arm and shoulder hurt and that he felt a tingling sensation in his upper extremity. After reviewing x-rays of the arm and consulting with Dr. Fagen, Fugle

attempted closed reduction of the dislocated shoulder. Plaintiff testified that Fugle attempted to replace the shoulder several times without success. Dr. Katzowitz, an internal medicine specialist on the staff of the hospital, also attempted reduction of the shoulder, while Dr. Fugle watched.

On March 28, 1967, plaintiff underwent surgery for the removal of bone fragments and repair of the head biceps tendon and joint capsule.

In his amended complaint plaintiff alleged that the hospital was responsible for the negligence of its staff doctors and interns in the treatment of the plaintiff which resulted in his suffering a brachial plexus injury and a fracture of the greater tuberosity. The theory upon which plaintiff sought recovery rests upon expert testimony that a closed reduction of a dislocated shoulder should be attempted within one to three hours after the dislocation unless a general anesthetic is used. After that time, the reduction should not be attempted without the anesthetic. The theory is that muscle spasms will occur and the muscles need to be relaxed. If muscle spasms have occurred or if too much force is applied in the reduction, injuries such as those suffered by the plaintiff could result.

Both Dr. Fugle and Dr. Katzowitz attempted reduction. Katzowitz admitted attempting a reduction by placing his foot on the plaintiff's chest while he pulled on his arm. Katzowitz attempted the reduction some 16 hours after the dislocation occurred. Plaintiff was given no anesthetic. There is some indication that plaintiff was experiencing muscle spasms at that time. In short, there was sufficient evidence to support a jury finding of negligence on the part of Dr. Katzowitz. Thus, the jury could have found the hospital liable for the negligent acts of at least one of the staff doctors.

In his instructions to the jury, the trial court stated that:

"[I]f you find that the defendant hospital, as well as their agents, servants and Doctor Fugle did breach the standard of practice of this and similar communities in their reducing of the shoulder, then you are to compute such damages you feel resulted from the departure of the standard of practice."

Later the judge stated:

"I further charge you, members of the jury, that the hospital was under a duty to a patient to see that he was provided with competent medical care and treatment while he was confined there. If the hospital does not provide him with proper and competent medical care and treatment, the hospital would be liable for the negligence of the person that they so provided who was on their staff or who is a resident in training or internist."

The trial judge initially told the jury that their verdict would be either for the plaintiff or for the defendants. The plaintiff objected to this charge. The jury was returned and the judge told them to disregard the previous instruction regarding the form of the verdict:

"If you agree upon a verdict in favor of the plaintiff, against both defendants, you may return your verdict in the following form: We, the jury, find in favor of the plaintiff, against both defendants, and assess damages at so many dollars.

"If you agree upon a verdict in favor of the plaintiff against Mount Clemens General Hospital, but not against Doctor Fugle, your form of verdict will be, we, the jury, find in favor of the plaintiff against the defendant, Mount Clemens General Hospital, and assess

damages at so many dollars, and we find in favor of the defendant, Doctor Fugle."

The jury returned a verdict against the hospital but in favor of Dr. Fugle.

In their motion for a new trial the defendants argued that the jury's exoneration of Dr. Fugle from liability required that judgment *n.o.v.* be entered on behalf of the hospital. The trial judge responded that both the pleadings and proofs would support findings of independent liability of both defendants. Defendant hospital appeals. One issue merits discussion.

The defendant hospital argues that since the plaintiff's claim against it was based solely upon vicarious liability for the acts of Dr. Fugle, the verdict rendered by the jury was inconsistent.

Initially, there is some question about whether the hospital has standing to raise the issue of inconsistency of the verdict. See *Schultz v Frost,* 294 Mich 457; 293 NW 716 (1940), *Burroughs v Eastman,* 101 Mich 419, 426; 59 NW 817 (1894). The jury verdict in this case, nevertheless, is not fatally inconsistent as it is responsive to the pleadings, supported by the evidence and consistent with proper jury instructions.

When a jury acquits the agent and holds the principal liable, the verdict is said to be inconsistent if there is no basis other than liability for the actions of the agent upon which the principal could be held. *Sutton v Benjamin,* 231 Mich 153; 203 NW 667 (1925), *Bartholomew v Walsh,* 191 Mich 252; 157 NW 575 (1916). Where there is evidence indicating that the liability of the principal could rest upon some other ground, however, such as the negligence of an agent not made a party to the suit, a verdict for the party agent and

against the principal is not inconsistent. *Chance v Ringling Bros Barnum & Bailey, Combined Shows Inc,* 257 Or 319; 478 P2d 613 (1970), *Louisville & N R Co v Maddox,* 236 Ala 594; 183 So 849 (1938).

The plaintiff pleaded and argued that the hospital was liable for the negligence of a person or persons other than Dr. Fugle. Evidence in support of the theory was introduced. The trial court correctly instructed the jury that it could hold the hospital liable for the negligence of a staff member and that they could return a verdict for Dr. Fugle and against the hospital. The jury did exactly that.

Affirmed. Costs of this appeal to the plaintiff.

M. F. Cavanagh, J., concurred.

Quinn, J. *(dissenting).* In view of the instructions to the jury on the liability of defendant, I dissent.

The court charged:

"I charge you that the hospital is not licensed to practice medicine and that the Mount Clemens General Hospital cannot be held liable in this matter unless you find each of the following facts:

That Dr. Fugle, in treating Laverne Grewe at the Mount Clemens General Hospital was under the control and direction of the hospital in his practice of medicine as it related to Laverne Grewe.

That Dr. Fugle, while under the control or direction of the hospital, violated the standard of practice.

That the negligence of Dr. Fugle was a proximate cause of, or was causally related to, the damages allegedly suffered by the plaintiff."

The only basis for finding defendant hospital liable under this instruction was a finding that Dr. Fugle was liable.

I would reverse.