Minnie REGISTER, mother, next friend and guardian ad litem of Kerwin Register, an infant, Plaintiff, Appellant and Cross-Appellee,

v.

The WILMINGTON MEDICAL CENTER, INC., Defendant, Appellee and Cross-Appellant.

Supreme Court of Delaware.

Submitted March 22, 1977.

Decided July 26, 1977.

Petition for Reargument Denied Aug. 18, 1977.

PER CURIAM.

In this medical malpractice action, plaintiff appeals from a judgment entered on the verdict of a Superior Court jury for The Wilmington Medical Center, Inc. (defendant).* We conclude that the Trial Court improperly withheld from the jury relevant evidence concerning the attending physician's past professional performance and, for that reason, we reverse.

## I

Plaintiff brings this action for damages on behalf of her minor child who was injured during childbirth. The resulting condition, known medically as "Erb's palsy," has left the child with permanent partial paralysis of the right arm.

■ Principally, plaintiff contends that: (1) defendant's employees negligently injured the child during the course of delivery, and (2) defendant failed to properly supervise the conduct of its employees in the performance of their duties. Agency is not disputed and the Center will be liable under the doctrine of *respondeat superior* if plaintiff can establish the physician's malpractice. *Vanaman v. Milford Memorial Hospital, Inc.*, Del.Supr., 272 A.2d 718, 720 (1970); see generally, Annot., 69 *A.L.R.2d* 305 (1960).

The physician in control of the delivery was a first-year obstetrics resident enrolled in a residency program. At trial, plaintiff sought to introduce into evidence performance evaluation reports of the resident which were routinely prepared by doctors on the Center's staff. Testimony of one of the evaluators was also offered into evidence.

Defendant objected on relevancy grounds to both the reports and the testimony and, after argument on the issue, the Trial Court ruled that the evidence could not be presented to the jury.

## II

■ It is settled law in Delaware that a physician is bound to exercise the same

Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff, appellant and cross-appellee.

Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendant, appellee and cross-appellant.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

* The attending physician is not a party to the action.

degree of care and to perform with the same competence ordinarily exercised and performed by other physicians in good standing in the same community. *Coleman v. Garrison,* Del.Supr., 349 A.2d 8, 10 n. 2 (1975), and cases cited therein. Similarly, a hospital, as an employer of health care personnel, is required to make available to persons receiving such care, employees who possess the skill and training necessary to comply with the *Coleman* standard. See, generally, Annot., 51 *A.L.R.*3d 981 (1973).

The Center, of course, functions in many capacities, two of which are identified in this lawsuit: it offers advanced medical education (through a residency program in obstetrics) and it provides medical assistance to expectant mothers (in a child-delivery facility). The Center's educational activity, however, does not in any way weaken or modify the duty placed upon it by law as an entity providing medical assistance. In short, a physician practicing as a resident is bound by *Coleman.* Cf. *Moeller v. Hauser,* 237 Minn. 368, 54 N.W.2d 639 (1952). And when the Center furnishes health care, it is required to provide a doctor who measures up to that standard.

Evidence as to the Center's responsibility for a resident's conduct may be admitted on at least two theories: it may be received under generally accepted agency principles, *Vanaman v. Milford Memorial Hospital, Inc., supra,* or it may be received on the issue of whether the Center negligently utilized or failed to adequately supervise a resident who did not meet the *Coleman* standard in performing the task to which he was assigned. See, generally, Prosser, *The Law of Torts* § 70 (4 ed.), 51 *A.L.R.*3d, *supra,* and the *Restatement* (Second) *of Torts* §§ 307, 308 (1965) and the *Restatement* (Second) *of Agency* § 213 (1958); the latter provides in pertinent part:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

(c) in the supervision of the activity; or . . . .."

That principle supports the instruction given by the Trial Judge to the jury as follows:

"Now, the defendant, Wilmington Medical Center, Incorporated, is in the business of providing health services to the general public and holds itself out as being qualified to provide such services. When an institution, such as a hospital, holds itself liable as being qualified to provide health services to the public, it is the general rule that it is bound to the same standard of care and competence as other employers of health services in good standing ordinarily adhered to in the same or similar community. *This standard requires that the hospital make available employees that possess a reasonable average ability to carry out their professional work and that they exercise reasonable care, skill and judgment in performing their duty in an effort to accomplish the purposes for which they are employed.*" (Emphasis added.)

### III

Turning now to the evaluation reports, it appears that the Trial Court's ruling was based on a broad finding that they were not relevant. Speaking generally, relevancy is determined by examining the purpose for which evidence is offered. Evidence which is irrelevant for one purpose may be quite relevant for another, and that trial paradox is particularly conspicuous when character or reputation evidence is offered or when, as here, evidence is offered to prove notice rather than the merits of the claim which is the foundation of the action. See McCormick, *The Law of Evidence* § 200 (1972); compare *Pippin v. Ranch House South, Inc.,* Del.Supr., 366 A.2d 1180 (1976).

In an action founded on medical malpractice, a basic issue is whether the attending physician possessed the requisite knowledge and skill. Cf. 61 *Am.Jur.*2d

Physicians, Surgeons and Other Healers § 110, p. 230. The evaluation reports tendered by plaintiff contain opinions of defendant's staff physicians concerning the resident's overall professional performance and potential as a senior resident or practicing physician. Unquestionably, the reports may not be used to create an inference that the resident acted negligently or carelessly during the delivery of Kerwin Register. But supplying this particular resident and/or the *quantum* of supervision to be exercised over the resident during delivery are quite different matters. The reports contain probative evidence of notice to defendant of the resident's past performance at the Center, including, *inter alia*, his language difficulties and whether he possessed the requisite knowledge and skill, 61 *Am. Jur.*2d, supra; to that extent they are relevant on the issue of whether defendant was negligent in supplying a resident to perform services which involved a risk of harm to others, or in the supervision of his activity under the circumstances. *Restatement* (Second) *of Agency, supra.* We so hold.** The ruling by the Superior Court rejecting the reports in their entirety was, therefore, reversible error.

Our determination as to relevancy and admissibility is general and assumes that the reports are authenticated and that they are otherwise admissible. On application, the Trial Judge may, in the exercise of his traditional discretion, order excised from any report any part thereof which he deems to be irrelevant or immaterial to the issues noted above.

\* \* \* \* \* \*

In view of our conclusion, it is unnecessary to discuss other issues argued by the parties.

\* \* \* \* \* \*

Reversed and remanded for proceedings consistent herewith.

** Defendant argues that the reports are inadmissible on the grounds of confidentiality. Disclosure, defendant contends, would chill the frankness of the evaluative process which is essential to the success of a critical learning program. That is an appealing argument but we

are unaware of any principle in our law which would make the reports privileged or subject to non-disclosure or use in this action, which seeks redress for alleged malpractice by the physician who is the subject of the reports.