**Diane FJERSTAD, as Special Administrator of the Estate of Dezso Csoka, Plaintiff and Appellant,**

v.

**Dr. John M. KNUTSON and Sioux Valley Hospital, a South Dakota Corporation, Defendants and Respondents.**

No. 12045.

Supreme Court of South Dakota.

Oct. 26, 1978.

Rehearing Denied Nov. 21, 1978.

David V. Vrooman, Sioux Falls, for plaintiff and appellant.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and respondents.

PORTER, Justice (on reassignment).

## CASE SUMMARY

This is an action by the special administrator of the estate of Dezso Csoka for his wrongful death, allegedly caused by negligent medical services rendered to decedent by defendants. The trial court rendered judgment, based on a jury verdict, for defendants. On appeal plaintiff contends: (1) The trial court erred in instructing the jury that it could not find defendant Sioux Valley Hospital liable unless it found defendant Knutson liable; (2) the court erred in refusing to instruct on negligence per se based on the facts that defendant Knutson was not licensed to practice medicine, that a hospital cannot practice medicine, that an unlicensed physician cannot issue prescriptions and that one may not use the title "Doctor" unless licensed; (3) that the court erred in instructing the jury that an unlicensed intern can make a "bona fide medical judgment;" (4) that the court erred in refusing to instruct the jury to consider the instructions as a whole and not to concern itself with the reasons for admission or exclusion of evidence; and (5) that the instructions as a whole were improper.

We conclude that the separate liability of Sioux Valley Hospital was not properly presented to the jury, and we therefore reverse and remand for a new trial against Sioux Valley Hospital. We affirm that part of the judgment which found defendant Knutson not liable.

## FACTS

Decedent Dezso Csoka and his family went on vacation in late June, 1973, and were returning to their home near Chicago when they arrived in Rapid City on July 2. Decedent felt ill on his arrival, but did not seek medical attention because he wanted to return to Chicago and see his own doctor. On July 4 the Csoka family traveled across South Dakota, with decedent driving the entire distance. Decedent's condition had deteriorated upon their arrival in Sioux

Falls. He and his family rented a motel room and then went to the emergency room at Sioux Valley Hospital.

Decedent arrived at the hospital at 6:22 p. m. He was seen by intern John Knutson at 8:30. Knutson was the only intern on duty and there were no licensed physicians present. July 4 was Knutson's second day as an intern. Knutson examined decedent and ordered a blood test and throat culture. He then gave decedent a prescription for an antibiotic, erythromycin, and released him. Knutson did not use mirrors or a laryngoscope, even though these instruments were available to him. Use of such instruments would have allowed him to see beyond the soft palate to the epiglottis, tonsils, and trachea.

It was the policy of the hospital not to release emergency room patients until the on-call physician or the patient's local doctor had been contacted. Interns were to initiate a course of treatment only in emergencies, and they were not to prescribe drugs without consulting a licensed physician. Knutson attempted to contact the on-call physician for consultation in decedent's case, but was unable to do so for three and one-half to four hours. The hospital was responsible for assigning on-call physicians and assuring that they would be available when they were on call.

After Knutson released him, decedent returned to his motel. He took at least two of the antibiotic pills as directed by Knutson. When decedent's wife and children awoke the next morning, they found him dead. The autopsy indicated that death was caused by asphyxia resulting when his larynx, tonsils, and epiglottis swelled, and the trachea was blocked.

## ISSUES

The major issues presented by this appeal are:

ISSUE ONE: Was the separate liability of Sioux Valley Hospital properly submitted to the jury?

ISSUE TWO: Was plaintiff entitled to further instructions on negligence per se?

## DECISION

### ISSUE ONE

We conclude that the separate liability of Sioux Valley Hospital was not properly submitted to the jury.

In reviewing the propriety of instructions, we must consider the evidence to determine which jury issues are presented.[1] We must then evaluate the instructions as a whole to determine whether they were prejudicial to the party who proposed other instructions or who objected to the instructions as given, and whether they fairly presented all issues in the case to the jury. See *Mueller v. Mueller,* 88 S.D. 446, 221 N.W.2d 39 (1974); *Jorgenson v. Dronebarger,* 82 S.D. 213, 143 N.W.2d 869 (1966); *Dwyer v. Christensen,* 77 S.D. 381, 92 N.W.2d 199 (1958).

We first evaluate the evidence in order to determine whether the separate liability of Sioux Valley Hospital presented a jury issue. Our enumeration of facts constituting a theory of negligence should not be taken as excluding other theories that could be inferred from the record.

Under proper instructions, the jury could have found that Sioux Valley Hospital was negligent even if Knutson was not. Although it has been held that a hospital, even one operating an emergency room, has no duty to accept a patient for treatment, *Birmingham Baptist Hospital v. Crews,* 229 Ala. 398, 157 So. 224 (1934), once it undertakes to render medical aid, the hospital is required to do so non-negligently. See *Citizens Hospital Association v. Schoulin,* 48 Ala.App. 101, 262 So.2d 303 (1972); *Register v. Wilmington Medical Center Inc.,* 377 A.2d 8 (Del.Supr.1977); *Bourgeois v. Dade County,* 99 So.2d 575 (Fla.1957); *Grewe v. Mount Clemens Gen-*

1. We must consider the evidence in the light most favorable to plaintiff since the instructions given, in effect, directed a verdict against plaintiff as to the hospital's liability, independent of Knutson. *Ehlers v. Chrysler Motor Corp.,* 1975, 88 S.D. 612, 226 N.W.2d 157, 179.

*eral Hospital,* 74 Mich.App. 479, 253 N.W.2d 805 (1977); *New Biloxi Hospital, Inc. v. Frazier,* 245 Miss. 185, 146 So.2d 882 (1962); *Powers, Hospital Emergency Service and the Open Door,* 66 Mich.L.Rev. 1455, 1460–1475 (1968). The duty arose in this case, since the hospital undertook, through its nurses and intern, to render treatment to decedent. Decedent had a right to expect that the treatment rendered by a hospital which maintains and staffs an emergency room would be commensurate with that available in the same or similar communities or in hospitals generally. *Register,* supra (Community standard); *Miller v. Trinity Medical Center,* 260 N.W.2d 4 (N.D. 1977); *Dickinson v. Mailliard,* 175 N.W.2d 588 (Iowa 1970) (Standard practiced by hospitals generally.)

On this record, however, we find it unnecessary to evaluate the evidence in light of one of these standards, since the evidence of the hospital's breach of its own standards is sufficient to create a jury issue. The medical director of laboratories at the hospital, Dr. John Barlow, testified that the emergency room on-call doctor is to be available for consultation and that he is assigned that duty by the hospital. Dr. Richard Friess, director of the hospital's medical education program, testified that interns could see the patients, but that the on-call physician, according to hospital policy, had to be contacted before treatment in all but serious emergencies. It is uncontroverted that the emergency room doctor was not available for consultation, and that Knutson rendered treatment without such consultation.

The failure to have an emergency room doctor available and failing to consult with him violated the hospital's own standard for treatment. This failure was attributable to the hospital in several ways independent of any negligence by Knutson. The jury could have believed, from the above evidence, that the hospital failed to properly assign an emergency room on-call physician, or that Knutson was not properly trained by the hospital to consult with a physician before releasing an emergency room patient. In addition, the actions of the on-call doctor in not being available for call to the emergency room are attributable to the hospital. In his capacity as on-call physician, he was acting on behalf of the hospital, and emergency patients could properly assume that the hospital would be responsible for the actions of its on-call physician. *Mduba v. Benedictine Hospital,* 52 A.D.2d 450, 384 N.Y.S.2d 527 (1976).

Defendants insist that failure to have the on-call physician available was not the cause óf decedent's death. Several expert defense witnesses so testified. There was, however, testimony from Dr. John Gregg that proper diagnostic procedures would have revealed the seriousness of decedent's condition. Dr. Gregg also testified that someone with decedent's symptoms should have been hospitalized, and that proper hospitalization would probably have saved decedent's life. The jury thus could have believed that an experienced physician would have taken the necessary steps to save decedent's life.

We must next consider whether the instructions as given were prejudicial to plaintiff. The verdict cannot be set aside if the instructions, considered as a whole, give a full and correct statement of the law applicable to the case, *Huntley v. Harberts,* S.D., 264 N.W.2d 497 (1978); *Mueller v. Mueller,* supra; *Dwyer v. Christensen,* supra. We conclude that instruction five,[2] however, gave "undue emphasis to [a] phase of the case favorable to [one] side," *Jorgenson v. Dronebarger,* supra, and thus constituted reversible error. The instruction stated, without any limitation, that the jury could not find against the hospital if it

---

2. The court's instruction five read as follows:
 The defendants are sued as principal and agent. The defendant Sioux Valley Hospital is the principal and the defendant John M. Knutson is its agent. If you find the defendant John M. Knutson is liable, then you must find that the defendant Sioux Valley Hospital is also liable. *However if you find John M. Knutson is not liable, then you must find that Sioux Valley Hospital is not liable.* (Emphasis added.)

found for Dr. Knutson. Although later instructions [3] seem to refer to the hospital's separate liability, they do not eliminate the error of instruction five. This is particularly the case where the trial court refused to instruct the jury to consider the instructions as a whole.[4] We therefore conclude that a new trial is required on the issue of the hospital's separate liability.

## ISSUE TWO

We conclude that plaintiff was not entitled to further instructions on negligence per se.

Plaintiff cites four statutes which she claims were violated by the hospital and Knutson, and contends that violation of these statutes constituted negligence per se.

■ The first contention is that Knutson was negligent as a matter of law because he practiced medicine without a license, in violation of SDCL 36–4–8,[5] because he prescribed drugs in violation of SDCL 36–11–2(11) and 36–11–2(13),[6] and because he used the title "Doctor" when not licensed, which constitutes practice of medicine. SDCL 36–4–9.[7]

We believe that these statutes must be read with statutes requiring internships as prerequisites to the practice of medicine in South Dakota. SDCL 36–4–11.[8] Although

**3.** Instruction 7 reads, in relevant part, as follows:

In this action the plaintiff has the burden of proving these issues:
1. That Dr. Knutson *or* Sioux Valley Hospital, *or both* such defendants were negligent.
2. That such negligence on the part of *one or both* of· the defendants was the proximate cause of Mr. Csoka's death.
3. That pecuniary loss and damage which is directly attributable to the death of Mr. Csoka [sic]. (Emphasis added.)

Instruction 15 reads, in part, as follows:

If you should find that the defendant Sioux Valley Hospital, did not use reasonable care in furnishing the decedent, Dezso Csoka, care, attention and protection required of his mental and physical condition, and that such failure was the proximate cause of his death, then your verdict must be in favor of the plaintiff and against the defendant Sioux Valley Hospital.

A failure to perform such duty is negligence.

**4.** Plaintiff offered the following proposed instruction:

The law that applies to this case is contained in these instructions and it is your duty to follow them. You must consider these instructions as a whole and not single out one instruction to the exclusion of the others.

**5.** SDCL 36–4–8 reads:

Any person who practices medicine, osteopathy, surgery, obstetrics or any of the branches thereof without a license which is recorded as required by this chapter, is guilty of a Class 1 misdemeanor.

**6.** SDCL 36–11–2 provides in relevant part:

Terms used in this chapter, unless the context plainly requires otherwise, mean:
\* \* \* \* \* \*
(11) 'Prescription,' an oral order given individually for the person for whom prescribed, directly from a prescriber licensed under the laws of this state, or indirectly by means of a written order, signed by the prescriber; and shall bear the name and address of the prescriber, his license classification, the name and address of the patient, the name and quantity of the drug prescribed, directions for use, and the date of issue. 'Prescriber' includes physicians, dentists, podiatrists or veterinarians.
\* \* \* \* \* \*
(13) 'Physician,' any person holding a current valid and unrevoked license from the state board of medical and osteopathic examiners to engage in the practice of medicine or osteopathy, surgery, or obstetrics in any of their branches when acting within the scope of his licensure or when licensed by another state and said license not being suspended or revoked.

**7.** SDCL 36–4–9 provides:

For the purpose of this chapter, 'practice of medicine or osteopathic medicine' means, but not by way of limitation, to append or prefix the letters M.D., or D.O. or the title of Doctor or Dr. or Specialist or Osteopath or any other sign or appellation in a medical sense to one's name or to profess publicly to be a physician or surgeon or to recommend, prescribe or direct for the use of any person any drug, medicine, apparatus, or other agency for the cure, relief or palliation of any ailment or disease of the mind or body or the cure or relief of any wound, fracture or bodily injury or deformity, after having received or with the intent of receiving therefor, either directly or indirectly, any bonus, gift or compensation.

**8.** SDCL 36–4–11 provides in relevant part:

Such applicant must also present evidence satisfactory to the board that he has served as an intern or resident, or such equivalent

medical care standards should not be lowered by the intern requirement, that requirement is significant in interpreting the licensure statutes. Properly supervised interns should be allowed to work with doctors in treating patients. Whether the intern is negligent can best be determined on a case by case basis, and not by an inflexible negligence per se standard under the licensure statutes.

Aside from the intern requirement, we do not believe that failure to have a license should, in itself, render the unlicensed person negligent. A physician is negligent if his treatment is improper, but failure to have a license is not enough to render the treatment automatically deficient. *See Tittle v. Hurlbutt,* 53 Haw. 526, 497 P.2d 1354 (1972); *Janssen v. Mulder,* 232 Mich. 183, 205 N.W. 159 (1925) (chiropractor); Prosser, Law of Torts 196 (4th ed. 1971). The same is true on the issue of the intern being called "Doctor". Although doing so may be a misdemeanor, it does not render Knutson's treatment negligent per se.

 The second contention is that Sioux Valley Hospital was negligent per se because it was practicing medicine through its unlicensed intern. We conclude that this contention is likewise without merit. According to SDCL 36–4–11, the intern must serve his internship *in a hospital.* Also, the fact that a hospital violates these licensure statutes does not in itself render the hospital negligent.

## OTHER ISSUES

 Plaintiff contends that it was error to instruct the jury that Knutson could escape liability if he made a "bona fide error in judgment," since Knutson was not a licensed physician. This contention is without merit. The instruction involved [9] allows Knutson to escape liability only if he made an error in judgment while performing according to the standard of care for licensed physicians in similar localities. As we noted above, the lack of a license, without more, does not render his conduct negligent. An error in judgment within the standard of care for licensed physicians would likewise not render the medical treatment negligent.

 Plaintiff's next contention is that refusal to instruct the jury to consider the instructions as a whole and not single any of them out, constituted reversible error. We believe this refusal compounded the error discussed in *ISSUE ONE* above. We

service as may be approved by the board, in a hospital approved by the board, for such time as the board may by regulation legally provide.

9. Instruction thirteen reads as follows:

The mere fact that an unfortunate or bad condition resulted to the decedent Dezso Csoka does not prove or even imply, that the defendants, or either of them, by virtue of that fact alone, were negligent or unskillful. Neither physicians nor hospitals are to be held responsible for results but only for the kind of professional services rendered by them.

By undertaking professional service to a patient, a physician and surgeon represents that he has the necessary degree of skill and learning to do so. That degree of skill and learning is generally measured by the skill and learning possessed by other physicians and surgeons in good standing practicing in similar localities under similar circumstances.

It is his further duty to use that skill and learning as ordinarily used in like case by reputable members of his profession practicing in similar localities and under similar circumstances and to be diligent and use his best judgment and learning in an effort to accomplish the purpose for which he is employed.

The violation of any of these duties is a form of negligence.

If you should find that the defendant Dr. Knutson failed to carry out any one or more of these duties and such failure was the proximate cause of the death of which the plaintiff complains, then your verdict must be for the plaintiff and against the defendant Dr. Knutson.

If a physician brings to his patient care, skill, and knowledge, he is not liable to him for damages resulting from a bona fide error of judgment of which he may be guilty. The law requires a physician to base any professional decision he may make on skill and careful study and consideration of the case, but when the decision depends on an exercise of judgment, the law requires only that the judgment be bona fide. A physician is not an insurer of the correctness of his judgment.

conclude, however, that any error beyond that is not so prejudicial as to be reversible. The same conclusion pertains to the failure to instruct the jury not to concern itself with admission or exclusion of evidence.

Plaintiff's final contention is that the instructions as a whole were improper. We believe that the only reversible error has been dealt with in *ISSUE ONE*, above.

### CONCLUSION

For the reasons stated, we affirm that part of the judgment which found for Knutson. We reverse, however, as to Sioux Valley Hospital, and remand the case for a new trial as to the defendant hospital.

DUNN, ZASTROW and MORGAN, JJ., concur.

WOLLMAN, C. J., concurs in part and dissents in part.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I do not agree that the instructions given regarding the issue of the hospital's liability gave such undue emphasis to a phase of the case favorable to the hospital as to require reversal. When considered as a whole, the instructions present a full and correct statement of the applicable law. *Jorgenson v. Dronebarger*, 82 S.D. 213, 143 N.W.2d 869. As the trial court pointed out to counsel during the settling of the instructions, Instruction No. 5 explained the liability of the hospital under the doctrine of principal and agent. Instruction No. 15 explained to the jury that the hospital could be independently liable for its failure to provide reasonable care to Mr. Csoka. Appellant's counsel argued both theories of liability to the jury, and I therefore fail to see how appellant

can complain that the instructions were inconsistent or incomplete.*

I concur in the majority opinion with respect to the disposition of other issues raised by the appeal.

---

* Although the record is somewhat confused on this issue, I believe that the trial court intended to give an instruction similar to that requested by appellant regarding the duty of the jury to consider the instructions as a whole. When presented with the proposed instruction, the trial court indicated that a similar instruction was contained in the court's proposed instructions. When appellant's counsel replied that he did not see it there, the trial judge made an ambiguous reference to the fact that he thought that the instruction was contained in "the criminal set." My point is that the trial court did not reject out of hand appellant's proposed instruction on this issue and that the failure to give such an instruction apparently resulted more from oversight and from the pressures of the moment than from a deliberate decision not to give what is routinely considered to be a "stock" instruction.